*Hartford,*
June, 1840.

North
*v.*
Belden.

</div>

---

## KENDALL *against* THE NEW-ENGLAND CARPET COMPANY and others.

Where a manufacturing company, in embarrassed circumstances, made a general assignment of its effects to *A*, to secure him for his liabilities for the company, as endorser and otherwise, with power to work up the stock on hand, and to make purchases of any materials necessary for that purpose, and to reimburse all expenses so incurred from the avails of the property assigned; it was held, that such special power did not invalidate the assignment.

Where such company, after the assignment to *A*, mortgaged the same property to *B*; and then *C*, a partner in the company, and agent both for the company and for *A*, under the assignment, applied 1,000 dollars of the avails of the mortgaged property to the payment of other debts of the company; but it appearing that *A*, after the mortgages, had received funds of the company not embraced in the mortgages, to the amount of 4000 dollars, which he had

*Hartford,*
*June, 1840.*

Kendall
*v.*
The New-
England Carpet
Co.

credited in his account with the company and *B;* it was held, that neither the company nor *B* could take exception to the account, on this ground.

Although it is a general rule of equity, that a trustee is not to receive compensation, except for time and expenses, unless it be stipulated by the parties to be paid; yet where the assignee of the stock of a manufacturing company, in trust to work it up, and from the avails to indemnify himself for his responsibilities for such company, accepted the trust under an agreement with one of the partners, who was agent of the company, that he should be allowed the same compensation to which he would have been entitled if he had not been trustee; and it appeared, that he conducted the business with good faith, and without unnecessary delay; that his services were highly important to the company and all concerned, and without them the consequences ˙would have been ruinous; it was held, that certain sums charged in his account as commissions on his responsibilities, which were found to be, all things considered, only a reasonable compensation, ought to be allowed.

Where the assignee, in such case, had in his hands two funds, one of which was, and the other was not, specifically appropriated for the payment of his claim, and the former was also subject to the lien of a subsequent mortgagee; it was held that equity would not preclude such assignee from taking his compensation out of either fund, and compel him to resort to the personal security of the debtor, that both funds might enure, in the result of a general account, to the benefit of such subsequent mortgagee.

If during the pendency of a suit in chancery relating to property assigned in trust, sales are made, after the report of the committee and before its acceptance, varying the state of the account between the parties, evidence of such sales is admissible on the final hearing before the court.

THIS was a bill of foreclosure.

On the 1st of *August* 1837, *Thomas Brewer, Charles L. Roberts* and *Elbridge G. Roberts,* being partners under the name of *The New-England Carpet Company,* and indebted to sundry persons in large sums, secured by notes, signed by *C. L. Roberts,* as agent of the company, requested the plaintiff to endorse such notes; and to secure the plaintiff from loss or damage, by reason of such endorsements, the company mortgaged to him all their interest in the manufactory at *Tariffville,* and the adjacent buildings and water privileges; the plaintiff being at that time the legal owner of one third part of the property so mortgaged. On the 24th of *February,* 1838, the plaintiff being then liable on such endorsements, as well as on others afterwards made for the company, *C. L. Roberts,* the general and only acting agent of the company in superintending and managing their business, for the benefit of the company and their creditors, and with the approbation and assent of the other parties, executed the following

instrument to the plaintiff: " Whereas *Hugh R. Kendall* of the city of *Boston*, for the benefit and accommodation of the *New-England Carpet Company*, became liable, as endorser or otherwise, for the payment of certain promissory notes and debts made by and owing from said *Carpet Company*, a schedule whereof is hereunto annexed ; and whereas, upon an examination of the affairs of said company, it appears that they cannot provide payment for said notes and debts, as they respectively arrive at maturity ; and being under a strong honourary, as well as legal, liability to protect said *Kendall* from the great loss and inconvenience to which he will be subject, by reason of his being unexpectedly required to meet these payments, and prevent, as far as may be, any injury to his credit and standing, which might result from his being exposed to claims of so large an amount : *The New-England Carpet Company*, acting herein by *Charles L. Roberts*, their duly authorized agent, and a partner of said company, in consideration of the premises, and of five dollars already paid by said *Kendall*, do hereby bargain, sell, assign and make over unto said *Kendall*, his representatives and assigns, all the goods, wares, chattels, merchandize and effects, which are enumerated and mentioned in the schedule hereunto annexed. *To have and to hold* the said granted premises unto the said *Kendall*, his representatives and assigns, to his and their use for ever. Provided, however, that if it shall happen, that the proceeds of said assigned premises shall exceed the amount of moneys, which shall be required for the complete indemnity of said *Kendall* against said liabilities, and all damages, costs and expenditures, he may sustain or make on account thereof, then of said excess, said *Kendall* and his representatives shall stand possessed, for the use of said *New-England Carpet Company*, and shall pay the same to them, or upon their order ; but this proviso shall in no degree impair the right of said *Kendall* to dispose of said goods, chattels, merchandize and effects, when and as he thinks proper. It is further agreed between the parties, that said *Kendall* shall have the right to work up the stock on hand, and to make purchases of any materials necessary for that purpose ; and all expenses incurred as above, he may pay from the avails of the property herein assigned.

*Hartford,*
*June, 1840.*

Kendall
*v.*
The New-England Carpet
Co.

*Hartford,*
*June, 1840.*

Kendall
*v.*
The New-
England Carpet
Co.

Dated at *Tariffville,* the 24th day of *February,* 1838. Per *C. L. Roberts,* agent and partner, *New-England Carpet Company.*"

There was accompanying this instrument, a schedule of the property assigned. This instrument was executed and the property delivered to the plaintiff, with the knowledge of *Phelps, Beach & Co.,* to whom afterwards, on the same day, a portion of the same property was transferred, as security for a note of about 1300 dollars, and a book debt of about 4000 dollars, due to them from the company.

Under the arrangement thus made, the plaintiff conducted with good faith, in relation to the interests of the *Carpet Company* and the subsequent mortgagees; and none of the property so transferred to him, or since purchased by him, was lost, by his misconduct or default; and so long as the business was carried on by him, it was conducted conformably to the powers conferred on him; he acting with the advice and approbation of *C. L. Roberts,* who continued to take the general superintendence of the business, in the same manner as before. The manner of conducting the business by the plaintiff was fully known to *Phelps, Beach & Co.,* and though the manufacture and sale of the articles transferred was not completed until *June* 1838, it was protracted beyond the expectation, and contrary to the express wishes, of the plaintiff; who consented to it only to accomplish the object of the conveyance and to prevent a sacrifice of the property.

After making sundry deductions from the inventory of the articles, the amount in the hands of the plaintiff was 42,062 dollars, and 81 cents. Since the 24th of *February,* 1838, the plaintiff received notes, property and money of the company, amounting to the sum of 7,289 dollars, 84 cents, and from other sources of the funds of the company, not specifically appropriated to secure or pay their debts or liabilities, the sums of 1,564 dollars, 85 cents, and 2,306 dollars, 85 cents; which he credited in his general account with the company. The latter funds, he obtained without any authority from the company, and the knowledge thereof was not communicated to the company or their agent, until after this suit was commenced; when the plaintiff stated his accounts, crediting therein these sums; which was acquiesced in, by *C. L. Roberts,* the agent. After all deductions, there was a bal-

ance due to the plaintiff of 30,155 dollars, 99 cents, unless varied by the opinion of the court on the questions arising in the case.

From the avails of property in the plaintiff's hands, under the conveyance of *February* 24th 1838, or from funds by him remitted to *C. L. Roberts*, and by him charged in account with the company, there was appropriated by *Roberts*, for the payment of the debts due from the company to other persons than the plaintiff, the sum of 1,056 dollars, 92 cents, which *Phelps, Beach & Co.* claimed should be deducted from the above-mentioned balance. The plaintiff claimed, that as he had received and credited larger sums, from claims not included in the assignment, on which *Phelps, Beach & Co.* had no lien, they had no cause of complaint, but were in fact greatly benefited by the transaction.

As to the charges of the plaintiff for his personal services, the following facts were found. At the time of the transfer in *February*, 1838, the plaintiff was liable for the company in the nature of an honourary obligation, to the amount of about 60,000 dollars. This was a time of extensive commercial pressure, when a sale of the real estate of the company could not have been effected, but at a price merely nominal; and to have stopped the works, discharged the operators and sold the effects, would probably have been attended with ruinous consequences to the company and their creditors. It was believed, by the plaintiff and the company, that if the stock and machinery were thus forced into market, they would bring almost nothing. Under these circumstances, and while the pecuniary affairs of the country were extremely deranged, the plaintiff, with the knowledge of all the parties, and without objection from any of them, undertook the payment of his large liabilities for the company, and to carry on the works of the company, for the purposes mentioned in the assignment. In the prosecution of this business, he was obliged to make large advances for the company, so that he was in advance in cash, in *September* 1838, the sum of 20,000 dollars, and in *June* 1839, the sum of 42,000 dollars. From the commencement of the business, he became personally responsible for all goods sold by him, with an agreement with *C. L. Roberts*, the agent of the company, that he was to charge for his services, as he would have done, if he had had no interest in the business. After certain deductions made by the committee, they found, that

*Hartford,*
*June, 1840.*

*Kendall*
*v.*
*The New-*
*England Carpet*
*Co.*

the plaintiff had charged no more than a reasonable compensation for his services and the responsibility he had assumed. After this suit was commenced, *viz.* in *September* 1838, and in *January* 1839, the plaintiff rendered his several accounts to the company and to *Phelps, Beach & Co.,* containing his charges for services to those periods, made upon the same principle on which they had been previously made ; and no objections were ever offered, by any of the defendants, to the amount of his compensation so charged, until they filed their answer to the present bill ; nor was it ever intimated to him, that if he continued the business, such compensation would be objected to. But it was claimed by the defendants before the committee, that in carrying on said business, the plaintiff was to be considered solely as a trustee, who voluntarily assumed a trust as guardian, executor, or administrator ; and that no additional allowance would be made from the fact that he made advances, or assumed responsibilities in the business of the company ; and that the only mode of fixing compensation, was by a salary or a *per diem* allowance. If, in the opinion of the court, the plaintiff was not entitled to any allowance for responsibilities incurred in the due and faithful performance of his duties to the company and for advances made, considering the circumstances under which his services were rendered, but is to be remunerated on the general principle adopted in chancery in respect to voluntary trustees or assignees, the committee found that there should be deducted, the further sum of 3,672 dollars, 19 cents.

*Phelps, Beach & Co.,* also claimed, that the instrument executed to the plaintiff, by *C. L. Roberts,* on the 24th of *February* 1838, so far as it authorized the plaintiff to carry on the business, and wind up the affairs of the company, was utterly void ; and that the plaintiff in accounting for the property so transferred, could charge the fund only with the payment of such debts as were then out-standing against the company, and with the necessary expenses incident to the sale of such property and the payment of such debts.

On the final hearing of the case, before the court accepted the report, the plaintiff offered the deposition of one *Barnes,* shewing the sales made of some of the mortgaged property, since the hearing before the committee, for the purpose of having the account modified so as to conform with the subse-

quent facts. On the latter sales and guaranties the plaintiff <span style="float:right">*Hartford,*<br>*June, 1840.*</span> had charged commissions. The defendants objected to the admission of this evidence, in this stage of the cause, and also to the charge of commissions.

<span style="float:right">Kendall<br>*v.*<br>The New-<br>England Carpet<br>Co.</span>

Upon these facts the court reserved the case, and the questions arising thereon, for the advice of this court.

*W. W. Ellsworth* and *T. C. Perkins,* for the plaintiff, contended, 1. That the plaintiff was not liable for the 1,056 dollars, 92 cents, paid out by *Roberts.* In the first place, *Roberts* was agent of all concerned, with the knowledge and consent of all ; and the plaintiff, if duly faithful, is not accountable for this common agent. Secondly, if the plaintiff, as agent of the company, took away this sum, the company supplied the 1,564 dollars, 35 cents, and the 2,906 dollars, 85 cents, which is credited by the plaintiff to their account, so that *Phelps, Beach & Co.* sustained no injury. Thirdly, the 1,056 dollars, 92 cents, paid out by *Roberts* for old debts, does not appear to have been raised out of *property assigned.* Fourthly, the application by the plaintiff and his account have been agreed to, by *Roberts.*

2. That the plaintiff was entitled to the compensation charged for personal services and responsibilities. In the first place, he carried on the business under the assignment, with the knowledge, concurrence, and assent of all parties concerned, and under an express agreement for compensation. Secondly, his charges are found to be only a suitable compensation for the services rendered. Thirdly, the account was presented to the defendants, during the progress of the business, as now claimed, and no objection was offered. Fourthly, the plaintiff could not, even if the *English* rule is to prevail in *Connecticut,* be treated as a *voluntary trustee.* He came in to assume *all* the responsibilities of this vast business—the buying, manufacturing and selling ; and he, by himself or agents, actually did the whole business of the establishment.

3. That the assignment was not void, by reason of the provision in it for carrying on the business. In the first place, the provision itself is legal. *DeForest* v. *Bacon* & al. 2 *Conn. Rep.* 633. *Cunningham* v. *Freeborn,* 11 *Wend.* 240. 255. Secondly, the mortgage to *Phelps, Beach & Co.* expressly ratifies this assignment to the plaintiff, with a condition to

*Hartford,*
*June, 1840.*

*Kendall*
*v.*
*The New-*
*England Carpet*
*Co.*

work up the stock.  This was the very object of the trust ; and the plaintiff under this trust can be accountable only according to the *terms* thereof, and not for *taking* the property merely : he took it to be treated and dealt with for a specific purpose ; and this has been done in good faith.

4. That the sale since the report might be received ; for the court will try the *whole* case.  Generally, an account of the partnership is taken down to the trial.  Under the answer, which is in the nature of a cross-bill, in this case, it was clearly proper.

*Hungerford* and *Toucey,* for the defendants, contended, 1. That the assignment to the plaintiff was not legal or valid, as against other creditors, by reason of the provision in it authorizing the plaintiff to carry on the business of the company, make purchases, &c.

2. That the plaintiff was responsible to *Phelps, Beach & Co.* for the 1,056 dollars, which *Roberts,* acting as his agent, took from the avails of the mortgaged property and applied to the payment of other debts than those provided for in the mortgages : in other words, *Phelps, Beach & Co.* had a right to insist, that the plaintiff should apply that sum towards the extinguishment of his claim against the company, and thus relieve the mortgaged property of his lien on it to that amount.   2 *Sw. Dig.* 155.

3. That no remuneration or commissions ought to be allowed to the plaintiff for responsibilities assumed by him on account of the company.   *Leith* v. *Irvine,* 1 *Mylne & Keene* 277.   *Breckenridge* v. *Brooks,* 2 *A. K. Marsh.* 239. *Manning* & al. v. *Manning's* exrs. 1 *Johns. Ch. Rep.* 527. *Green* & al. v. *Winter, Id.* 27.   *Schieffelin* v. *Stewart & al. Id.* 620.   *Jewett* v. *Woodward,* 1 *Edwards,* 195.   2 *Sw. Dig.* 118.

4. That if such compensation is allowable, as against the company, it ought not to be taken out of the funds on which *Phelps, Beach & Co.* have a lien ; nor so as in any way, to impair their security.

5. That after the report of the committee, no further evidence could be received to vary the state of the account.

WILLIAMS, Ch. J. The principal questions in this case arise upon the facts stated, in the report of the committee. The company being greatly embarrassed and unable to carry on their business, on the 24th of *February* 1838, mortgaged to the plaintiff, who was then endorser, and to whom they were largely indebted, the stock and personal property in the manufactory, with power and authority to work up the stock on hand, and purchase materials for that purpose ; and on the same day, the same property was mortgaged to *Phelps, Beach & Co.*, subject to this prior mortgage. This assignment was signed by *Roberts*, a partner in the company, and their agent. One question is, whether this power to purchase materials and work up the stock, was valid. And this question, although the last presented by the report, seems naturally to be the first in order for consideration ; for if the plaintiff had no power to make the purchases and to carry on this business, the whole account must be re-examined.

That such a power may be greatly beneficial to all the parties connected with the affairs of a large manufacturing establishment, is very apparent. That such a concern should suddenly be suspended, and the stock in the various stages of manufacture, be sold, in parcels or together, must greatly diminish the value of the property to the creditors, and impair their security. Accordingly, it has been holden, by the court, that such a power fairly conferred, was a valid power. *DeForest* v. *Bacon* & al. 2 *Conn. Rep.* 633. We see no cause to reverse that decision. It is indeed a power, which may be abused. But the interest of vigilant creditors will generally prevent its being used improperly, or if it is, procure its detection.

It was intimated, upon a former occasion, that in this case this power was void, because it was given by only one of the partners, who was also the agent ; but as the committee have found, that it was done by *Roberts*, with the approbation and assent of the other parties, that point has not been pressed in this court.

Other questions are submitted as to particular items in the account as stated by the committee.

It appears that *Roberts*, who was a partner in the concern and their agent, and also agent for *Kendall*, after he took the superintendence under his assignment, had, without the knowl-

*Hartford, June, 1840.*

Kendall
*v.*
The New-England Carpet Co.

*Hartford,*
June, 1840.

Kendall
*v.*
The New-
England Carpet
Co.

edge of the plaintiff appropriated the avails of the goods mortgaged to the plaintiff and to *Phelps, Beach & Co.*, the sum of 1,056 dollars, 92 cents, to the payment of other debts of the company; for the amount of which *Phelps, Beach, & Co.* claimed, that the plaintiff should account with them. As it respects the company, this money, having been, by one of their own number, applied to the payment of their own debt, they can have no claim upon the plaintiff therefor; and as it respects *Phelps, Beach & Co.*, the plaintiff claims they have no reasonable ground of complaint, as in the mode of stating the account, they have the benefit of a much larger sum. And in support of this, he shews, that since the mortgages, he has received and credited, of the funds of the company, not specifically appropriated to the payment of his debt, the sum of 1,564 dollars, and 35 cents, and the sum of 2,906 dollars, 85 cents, amounting to 4,471 dollars, 20 cents; and that even after deducting the 1,056 dollars, 92 cents, *Phelps, Beach & Co.*, received the benefit of more than 3,400 dollars, the avails of property not included in their mortgage. In the opinion of the court, this is a complete answer to that claim.

The case is merely this. The company have abstracted about 1000 dollars from the funds appropriated specifically for the payment of certain debts, and have returned into that fund more than four times that amount; and yet the creditors say, " we are wronged by what you have done." Such a claim needs only to be stated to be answered.

Another objection made to the account, is, for the personal services of the plaintiff. That the services of the plaintiff were highly important to the company, and all who were concerned in their affairs; that the plaintiff has conducted the business with entire good faith, and without unnecessary delay; that the compensation is a reasonable one; and that without his agency, considering the state of the business and of the country, the consequences must have been ruinous; are facts found by the committee.

But it is said, there is a stubborn rule of equity not to be violated, that an executor, guardian or trustee of any kind is not to receive compensation, unless it be stipulated by the parties, except for time and expenses; and that this allowance is not of that character. It is not denied, that this is the general rule of equity; although in this, as well as some of

our sister states, it has not been strictly adhered to, as it re-
gards executors. *Wilson* v. *Wilson*, 3 *Binney* 566. *Gran-
berry's* executor v. *Granberry*, 1 *Wash.* 250. It is a rule of
policy, similar to that by which a purchase made by a trustee
of the trust property, has been held invalid. It is designed
to prevent frauds, and not to allow even temptations for fraud.
As a general rule, it is a good one ; nor do we feel disposed
to impugn it ; nor do we think it necessary, in the present
case, to enquire how far it may have been relaxed in this
state. It is admitted by the champions for this rule, that a
fair and open bargain with a *cestui que trust,* is admissible ;
(*Ayliffe* v. *Murray,* 2 *Atk.* 58. 60. *Green* v. *Winter,* 1 *Johns.
Ch. Rep.* 39.) although it is said, the court will be very cau-
tious and wary in doing it. In this case, a bargain was made
by *Roberts,* one of the partners and the agent of the part-
ners, with the plaintiff, to allow him the same compensation to
which he would have been entitled, if he had not been trus-
tee, for the same services. This seems to be reasonable, in
the situation the company was in.

It is said, that *Roberts* was in the power and under the in-
fluence of *Kendall.* If the fact be so, it certainly ought to
lead to a close scrutiny of the contract, made with him ; and
if upon such examination, we find that contract to be a fair
and reasonable one, as in this case it has been found, we think
should be established.

Again, it was said, that it does not appear whether this
agreement was made before or after the written assignment :
that if made before, it was merged in the written contract ;
and if made after, the plaintiff should have shown it. Anoth-
er fact, however, also appears, that while the plaintiff was go-
ing on with this business, and long before his personal servi-
ces and responsibilities had ceased, though after the com-
mencement of this suit, *viz.* in *September* 1838, and in *Janu-
ary* 1839, the plaintiff rendered his account to the defendants,
containing his charges for services, made upon the same princi-
ple ; and that no objection was ever made to the compensation
charged therein, except that which is made in the answer, filed
long afterwards. This is certainly, as it respects the company,
evidence sufficient of an existing contract, authorising such
charges, after which, if it is claimed that this contract might

*Hartford,*
June, 1840.

Kendall
*v.*
The New-
England Carpet
Co.

*Hartford,*
June, 1840.

Kendall
*v.*
The New-
England Carpet
Co.

have been before the written assignment of *February* 1838, it becomes the duty of the defendants to show that fact.

When, therefore, we see the nature of the services; and the hazard incurred by the plaintiff thereby; and the agreement entered into, by the company, recognized as subsisting, after the commencement of this suit; we should deem it grossly inequitable and unjust, that this company should not only draw the plaintiff in, by an original contract to that effect, to incur these hazards and render these services, but that, by their subsequent silence, they should permit him to continue them a considerable time, after it was known to them what claim he made for those services, without objection on their part.

It is said, that however this may be, as it respects the company, yet as it respects *Phelps, Beach & Co.*, they cannot be affected; for not being parties to such an agreement, or even to the account, they had no right to object; and so ought not to be prejudiced, by the silence of the company. If it be admitted, that this argument is as decisive as it is supposed to be, it seems to the court, that there are other considerations, which show, that *Phelps, Beach & Co.* have no right to interfere between the plaintiff and the company upon this subject. Their claim must be founded upon this ground alone, that the common fund out of which the plaintiff's debt and their debt is to be paid, is appropriated, by the plaintiff, in a manner which courts of equity will not sanction. But upon an examination of this account, it appears, that there is credited 7289 dollars, 84 cents, as additional security for his debt, which the plaintiff has received of the company, which was not included in the mortgage to *Phelps, Beach & Co.*; and upon which, therefore, they can have no legal claim. Besides which, there is credited more than 300 dollars over and above the charge of 1056 dollars, 92 cents, before alluded to, received by the plaintiff, not appropriated specifically, either to the payment of the plaintiff's debt, or that of *Phelps, Beach & Co.* Whatever claim *Phelps, Beach & Co.* have to these funds is purely equitable; and equity will so marshall them as to do the best justice to all concerned. Thus, where *A* and *B* have mortgages upon the same property, and *A's* is prior in date, and, at the same time, *A* has a mortgage of another piece of property, on which *B* has no lien, a court of

equity will not permit *A* to sell the former estate only, and thus leave nothing for *B*, if he can get the whole, or a part, of his debt from the last mortgage; for the effect would be, to destory the benefit of *B's* lien, without any advantage to himself. He would, therefore, be compelled to satisfy his ·debt, so far as he could, out of the land upon which *B* had no lien. But if the second mortgage was given to him to secure another debt, as well as the first debt, no court of equity would compel *A* to sell the last estate, and apply the avails to the first debt, to relieve that land for the benefit of *B*.

*Hartford,*
*June, 1840.*

Kendall
*v.*
The New-
England Carpet
Co.

In this case, the plaintiff has a claim for compensation, which the company are bound to respond. But *Phelps, Beach & Co.* say, as it respects them, it ought not to be taken from the fund mortgaged to them. The plaintiff says, however, it is not taken from that fund. We have in our hands, and have credited in this account, more than 10,000 dollars, to which you can have no claim, it not being included in the property mortgaged to you. The only answer that *Phelps, Beach & Co.* can make to this, is, that they have an equitable claim to this fund. They certainly have this equity, that if the plaintiff, having two funds, can get his debt, by means of the one upon which they have no lien, he shall do it. *Phelps, Beach & Co.* now claim, that the plaintiff shall neither have his debt, nor the security: that because this debt is not a charge upon the common fund, in which they have a legal interest, therefore, it is not to bę charged upon another fund, in which they have no interest but such as a court of chancery apportions to meet the justice of the case. In other words, the plaintiff has a legal claim against the company, for services rendered, and responsibilities incurred; he has, in his hands, of the property of that company, much more than enough to satisfy this claim, upon which, *Phelps, Beach & Co.* have no lien, by virtue of their contract; but they insist upon it, that a court of equity shall take this fund from the plaintiff, who has it in his possession, and appropriate it to the payment of a debt, to which it was never pledged, and leave the plaintiff to the personal security of those by whom it was pledged to him in part. This would be to invert the rule, that where there are equal equities, the legal title shall prevail; if *Phelps, Beach & Co.* had established the fact that the equities were equal. So far from that, however, it would be manifestly

*Hartford,*
June, 1840.
─────
Kendall
*v.*
The New-
England Carpet
Co.

unjust to deprive the plaintiff of the security in his hands, which he must hold against the company, for the purpose of paying these creditors, who, as they have no legal rights, can only found their claim upon a superior equity. After the mortgage to *Phelps, Beach & Co.*, the company held this property entirely independent of *Phelps, Beach & Co.* and might appropriate it as they pleased. If they chose to appropriate it to the plaintiff, to satisfy other claims not embraced in his mortgage, or those very claims, *Phelps, Beach & Co.* have no ground to object ; and if, by means of it, the property mortgaged to them, is released from 6000 dollars of the lien thereon, they certainly have no reason to complain, if they do not gain the other 4000 dollars. And although a court of equity will interpose its shield in favour of these subsequent mortgagees, so as to prevent injustice being done to them, by a prior mortgage ; yet on the other hand, it will not suffer the defendants to make use of this as a weapon of offence, against one whose legal rights are superior, and whose equity is at least equal.

As the plaintiff, then, has a right, as against the company, to be allowed his compensation in this account, we see no valid objection to his claim, on the part of the subsequent mortgagees, taking the whole account together. We think, therefore, the account is to be settled upon the principles adopted by the committee.

Another question also arose, as to the admission of a deposition, showing sales made after the report of the committee, and before the final hearing in the superior court, by which the state of the account would be varied. It not being shewn, there was any surprise upon the party, the only question is, whether, as the committee have reported the state of the account to a given time, the court can enquire into subsequent alterations in that account. It is very apparent, that there may be cases, in which this might be highly important. It is the desire of a court of chancery to prevent further litigation, where it is practicable. Now, after the report of a committee, one party may have collected a large debt, or may have sustained a great loss, which would essentially vary the state of the account, which might make him a creditor instead of a debtor. Is there then any rule of equity,

which requires the court to render a judgment, which shall only lay the foundation for another suit ? This committee are only the organ of the court, or officers of the court, like a master in chancery, who finds facts, and whose powers terminate upon the return of their report. The court, therefore, hear objections to that report, and modify it as circumstances require. No objection to this course has been shewn ; and as it is carrying into more full effect the object of a suit to end the controversy between the parties, and as no authority to the contrary has been shewn, we think the deposition was properly admitted. In the case of *Hall* v. *Cone*, 5 *Day* 548. it would seem as if this practice must have been recognized ; and we have no doubt as to its propriety.

The superior court is advised, that the deposition was admissible in evidence ; and that the report of the committee should be accepted, and the account settled upon the principles by them adopted.

In this opinion the other Judges concurred.

Decree for plaintiff.