# Case No. 10,624.

## OVERMAN v. QUICK.

[8 Biss. 134;[1] 17 N. B. R. 235; 10 Chi. Leg. News, 210.]

Circuit Court, D. Indiana. Jan., 1878.

### CHATTEL MORTGAGE—POSSESSION—FRAUD—AGENCY.

1. In Indiana a mortgage of a stock of goods, with a parol agreement that the mortgagor should have possession and sell them in the usual course of his retail business, and apply the proceeds of the sale to the payment of the mortgage debt, is not fraudulent and void as against creditors of the mortgagor.

2. The mortgagor is, in effect, the mortgagee's agent for the sale of the goods.

[This was an action by David Overman, assignee, against John H. Quick.]

Turpie & Pierce, for plaintiff.
Ben. Davis, for defendant.

GRESHAM, District Judge. On the 21st day of January, 1876, John H. Quick, administrator of the estate of John S. Rockafeller, deceased, sold to Charles Brown, in pursuance of an order in the circuit court of the state, a certain lot of dry goods for five thousand two hundred and forty-four dollars, for which sum the purchaser, on the day of sale, gave his four equal promissory notes, payable, in six, nine, twelve and fifteen months respectively. Payment of these notes was secured by a chattel mortgage executed by the purchaser at the time of sale on the stock of goods. Brown is a citizen of Upland, Grant county, Indiana, and the sale was at Brookville, Franklin county, Indiana, the residence of Quick. Before receiving the goods, Brown informed Quick that he was going to add them to his stock at Upland, and sell them in the usual course of his retail business. Brown agreed, before Quick parted with the goods, that he would apply the proceeds of the sale to the payment of the notes, even before maturity, if he realized fast enough. He also agreed to collect several outstanding claims due him, and apply the money on this indebtedness. But there was no agreement that the goods should be kept separate from other goods, or that the

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

proceeds of the goods should be kept distinct from other moneys. The agreement was general, to pay the debts from the proceeds of the sale of the goods and collections from outstanding debts as soon as possible, even before maturity, if money was received fast enough. On this agreement Quick shipped the goods, and when received, Brown mingled them with his stock on hand and sold indiscriminately, keeping no separate accounts as to proceeds. Quick paid no further attention to the goods or his contract with Brown, until the 21st of July, 1876, when he inquired by letter, why the first note was not paid, and was informed in reply that owing to the slow sales, and difficulty in making collections, the money was not on hand. Notwithstanding default in payment of the note first due, Brown was permitted to retain possession of the goods, and deal with them precisely as before, until some time in September—just a few days before Brown went into bankruptcy—when Quick went to Marion, the county seat of Grant county, and placed the notes and mortgage in the hands of an attorney with instructions to foreclose. The first note has gone into judgment; the other three are in evidence. No part of the indebtedness to Quick has been paid. The proceeds arising from the sale of part of the goods, Brown, in violation of his agreement, applied on his other indebtedness, or in the purchase of other goods. Brown was adjudged a voluntary bankrupt in September, 1876. The mortgaged goods still on hand, which the assignee was able to identify, were appraised at four thousand four hundred dollars, and by the order of this court were sold by the assignee, and the question in dispute transferred to the proceeds. The master, to whom the case was referred, reported that the mortgage was fraudulent and void, and that the prayer of the plaintiff's bill asking that it be set aside ought to be granted. The defendant filed exceptions to the master's report.

The Indiana statute of frauds declares, that no assignment of goods by way of mortgage shall be valid against any other person than the parties thereto, when such goods are not transferred to the mortgagee or assignee, and retained by him unless such assignment or mortgage is acknowledged and recorded in the recorder's office of the county where the mortgagor resides, within ten days after its execution; and the question of fraudulent intent is in all cases to be deemed a question of fact. 1 Davis' Rev. Stat. 505.

On its face there is no objection to this mortgage, but it is claimed that the verbal agreement allowing Brown to retain possession of the goods and mingle them with his stock on hand at Upland, and dispose of them in the usual course of business without keeping any separate account of sales, rendered the instrument void. The case of Robinson v. Elliott, 22 Wall. [89 U. S.] 513, which went up from this district, is cited in support of this position. In that case the mortgage was

given to secure an antecedent debt, and by its terms allowed the mortgagor to retain possession of the goods and dispose of them in the usual course of business, as before, for his own benefit. The proceeds were not to be applied on the mortgage debt. The goods were to be sold for the benefit of the mortgagor, and not for the benefit of the mortgagee. The instrument, therefore, instead of being a security for the mortgagee, was simply a shield for the mortgagor against his other creditors. It could have no other effect. Such an instrument is not intended to perform the office of a mortgage, and is not a mortgage. In the case before us the mortgage on its face is free from objection; but after its execution, and before the goods were shipped from Brookville, it was agreed that the mortgagor should add them to his stock in trade at Upland, and sell them first for the benefit of the mortgagee. The agreement was to apply the proceeds to the payment of the notes, even before maturity, if sales were brisk enough. If, in fact, that was the agreement of the parties, and there was no intention thereby to hinder or delay other creditors, the statutes of this state were not violated. It is not claimed by the plaintiff that there was any actual intention on the part of either Quick or Brown to defraud any one by this arrangement. The plaintiff's position is that the agreement was in itself fraudulent, and that was the view of the master.

In delivering the opinion of the court in the case of Robinson v. Elliott [supra], Justice Davis said: "We are not prepared to say that a mortgage under the Indiana statute would not be sustained, which allowed a stock of goods to be retained by the mortgagor and sold by him at retail for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors." Brown was, in effect, Quick's agent for the sale of the goods; if he violated his agreement by neglecting to pay over to Quick the proceeds of the sales, and misapplied them, it is Quick's loss. Brown's creditors have no right to complain if the proceeds of the goods sold, are credited on Brown's indebtedness to Quick. It was all the same to them whether Brown sold the goods and paid the money to Quick or misappropriated it. In either case Quick is charged with the value of the goods sold as between him and Brown's other creditors.

Quick, in good faith, took a mortgage on the goods sold to secure the purchase money, at the same time authorizing Brown to sell the goods and account to him for the proceeds to the extent of the four notes. Brown sold part of the goods, but failed to account to Quick for the proceeds, and went into voluntary bankruptcy. Now, it would be manifestly inequitable to say that Quick should

not be allowed to take back the goods still on hand and capable of being identified.

I think the proceeds of the goods remaining unsold at the time the assignee came into possession should go to Quick, and that he should be allowed to prove against Brown's estate as an unsecured creditor for the goods sold by Brown and misappropriated, on surrendering the notes and mortgage.

NOTE. See, further, that a clause in a chattel mortgage, allowing the mortgagor to retain possession and sell the goods for the mortgagees as their agent, and to account to them for the proceeds, is valid. Hawkins v. Hastings Bank [Case No. 6,244]. But that in Illinois, a chattel mortgage authorizing the mortgagor to sell the property mortgaged, is void as against creditors. In re Forbes [Id. 4.922]; Davis v. Ransom, 18 Ill. 396; Barnet v. Fergus, 51 Ill. 352. See, also, In re Stephens [Id. 13,365]; Bowen v. Clark [Id. 1,721]; In re Morrill [Id. 9,821].