WILSON *v.* SULLIVAN.

The rule excluding parol evidence offered for the purpose of adding to, explaining, varying, or controlling the terms of a written contract, applies only in a case where the contract to be explained is between the parties to the suit, and not where it is between other parties.

The retention of possession of mortgaged personal property by the mortgagor is not indicative of fraud (Gen. St., *c.* 123, *s.* 2), and the mortgagor, as agent of the mortgagee, may sell the property for the purpose of applying the proceeds to the payment of the mortgage-debt, the consent of the mortgagee being indorsed upon the mortgage and recorded (Gen. St., *c.* 123, *s.* 13) ; but in such case the proceeds of sales must be applied to the extinguishment of the mortgage-debt. The proceeds will be regarded as thus applied, whether actually paid over to the mortgagee or not ; and any understanding that the mortgagor may sell the property for his own benefit, without accounting to the mortgagee for the proceeds, will invalidate the mortgage as to the mortgagor's unpreferred creditors.

The written consent need not express the stipulation that the proceeds of the sales shall be applied to the payment of the debt.

A secret trust being established, fraud is an inference of law ; but fraud is not to be conclusively inferred from the mortgagee's omission to declare, in a written permission of sale of mortgaged chattels, that the proceeds are to be applied towards the extinguishment of the mortgage-debt, and not retained for the benefit of the mortgagor.

TRESPASS, against a deputy sheriff, for attaching a stock of boots and shoes, as the property of Gilbert Brothers. The plaintiff claimed title by virtue of a mortgage, upon which he indorsed, at the time of its execution, the following : " Consent is hereby given to Gilbert Brothers selling the within mortgaged property, at their store in Suncook, in the regular and usual way of retail trade, subject, however, to the right of the mortgagee to revoke this consent at his pleasure."

Subject to the defendant's exception, the plaintiff was permitted to prove a verbal agreement as to the disposition of the proceeds of the sales of the mortgaged goods. And it appeared that the mortgagors were to retain the proceeds of sales for the purpose of applying them upon the notes secured by the mortgage. There was no agreement concerning the expense of selling the goods. The mortgagors never accounted to the plaintiff for the money received from sales between the date of the mortgage, April 10, and that of the attachment, May 11, which was between $50 and $70. The mortgagors did not keep the identical money received from sales, but did keep a like amount on hand. They made no change in their manner of doing business, after the date of the mortgage. They purchased goods between April

10 and May 11, which were mingled with the mortgaged stock, and sales were made from the mass indiscriminately, but the funds accruing from the sale of the mortgaged goods and the other were kept separate. One of the mortgagors made and repaired shoes, and the pay for his labor was not put with the proceeds of sales, but was used by him for his support, he accounting with his brother and partner for it.

There being no controversy concerning the facts, the court directed a verdict for the plaintiff, and the defendant excepted.

*Sargent & Chase,* for the defendant.

We claim, that, even after the parol contract as to the application of the funds was allowed to be proved, the reasoning and the principle involved, in the cases of *Putnam* v. *Osgood,* 51 N. H. 192, and 52 N. H. 148, apply, and that there would still be a secret trust which would vitiate the mortgage. *Coburn* v. *Pickering,* 3 N. H. 415; *Coolidge* v. *Melvin,* 42 N. H. 510.

The consent of the mortgagee, or the agreement as put in writing on the back of the mortgage at the time it was made, and which was also made a part of the record, disclosed such a trust as clearly vitiates the mortgage. It gave the mortgagors the right to sell "the mortgaged property, at their store in Suncook, in the regular and usual way of retail trade, subject, however, to the right of the mortgagee to revoke this consent at his pleasure." There is no claim that this consent was ever revoked by the mortgagees, but the same arrangement continued down to the time the goods were attached. This arrangement, without anything else, brings the case clearly within the principle of *Putnam* v. *Osgood, supra.*

The evidence, tending to show the verbal contract made at the same time with that written on the back of the mortgage, was incompetent. It tended to contradict or vary the terms of the contemporaneous written agreement, which cannot be done in that way. By the written consent, the mortgagor had leave to sell the goods "in the regular and usual way of retail trade." That was to sell for cash, or on credit for a longer or shorter time, as the vendor might think best. But by this verbal arrangement the mortgagor was to retain the proceeds to pay the plaintiff's notes. Under this arrangement he would not be authorized to sell on credit, but must receive the proceeds, and retain them to pay the notes.

But we say further, that a party, after having put a notice upon the back of his mortgage that he has in fact discharged his mortgage and cancelled it, so that the same is no longer of any validity or force whatever, cannot be allowed to show that by some private understanding between them, but kept secret from creditors and others, the mortgage is still to be valid and binding as between the parties.

The plaintiff is estopped by the notice he gave publicly, on the back of his mortgage, and which he had recorded, and cannot now show that this notice was not just what it purports to be upon its face.

These creditors, seeing this notice thus given to them by the plaintiff, have acted upon it as though it was true, and the plaintiff is now estopped to say or to show that it was not true. Nor can he so qualify it as to make it mean something entirely different from what it meant as originally written. He is estopped from the latter just as much as he would be from attempting to show that the written notice was false. We believe that in this way the doctrine of estoppel, as settled by all the authorities, applies to this case, and renders the evidence that was admitted, subject to the defendant's exception, incompetent. *Horn* v. *Cole*, 51 N. H. 287.

And in support of the first point taken by the defendant's counsel, they cited and commented upon *Gage* v. *Whittier*, 17 N. H. 312; *Roberts* v. *Crawford*, 54 N. H. 532; *Collins* v. *Myers*, 16 Ohio 547; *Freeman* v. *Rawson*, 5 Ohio St. 1; *Harman* v. *Abbey*, 7 Ohio St. 218; *Bishop* v. *Warner*, 19 Conn. 460; *Wood* v. *Lowry*, 17 Wend. 492; *Divver* v. *McLaughlin*, 2 Wend. 596; *McLachlan* v. *Wright*, 3 Wend. 348; *Stoddard* v. *Butler*, 20 Wend. 507; S. C., 7 Paige Ch. 163; *Griswold* v. *Sheldon*, 4 N. Y. 581; *Edgell* v. *Hart*, 9 N. Y. 213; *Gardner* v. *McEwen*, 19 N. Y. 123; *Russell* v. *Winne*, 37 N. Y. 591; *Place* v. *Langworthy*, 13 Wis. 629; *Steinart* v. *Deuster*, 23 Wis. 136; *Chophard* v. *Bayard*, 4 Minn. 533; *Horton* v. *Williams*, 21 Minn. 187; *Davis* v. *Ransom*, 18 Ill. 396; *Barnet* v. *Fergus*, 51 Ill. 352; *Welsh* v. *Bekey*, 1 Penn. 57; *Hower* v. *Geesaman*, 17 S. & R. 251; *Lang* v. *Lee*, 3 Rand. 410; *Addington* v. *Etheridge*, 12 Grat. 436; *Sheppards* v. *Turpin*, 3 Grat. 373; *Robinson* v. *Elliott*, 22 Wall. 513.

*Mugridge*, for the plaintiff.

The facts stated do not bring the case within the principle of the decision in *Putnam* v. *Osgood*. The agreement of the mortgagee, indorsed on the mortgage, does not contain anything which of itself would be sufficient for that purpose. And assuming that it might, standing by itself without any further evidence, be sufficient to warrant presumptions and findings by the jury of other facts to bring it within the principle referred to, yet it is open to explanations. *Coburn* v. *Pickering*, 3 N. H. 415; *Putnam* v. *Osgood*, 52 N. H. 154. And the explanations made in this case fully rebut such presumptions, and show facts which take the case out of the application of *Ranlett* v. *Blodgett*, 17 N. H. 298, and *Putnam* v. *Osgood*. See *Ford* v. *Williams*, 3 Kern., cited in *Putnam* v. *Osgood*, 51 N. H. 201.

The plaintiff's counsel also cited and commented upon *Brooks* v. *Powers*, 15 Mass. 244; *Fletcher* v. *Willard*, 14 Pick. 464; *Ulmer* v. *Hills*, 8 Greenl. 326; *Cutter* v. *Copeland*, 18 Me. 127; *Briggs* v. *Parkman*, 2 Met. 258; *Jones* v. *Huggeford*, 3 Met. 515; *Melody* v. *Chandler*, 3 Fairf. 282; *Abbott* v. *Goodwin*, 20 Me. 408.

FOSTER, J. It would seem that the verbal agreement concerning

the disposition of the avails of the mortgaged property was a collateral arrangement, independent of, but not inconsistent with, the terms of the indorsement upon the mortgage, and that if it had any tendency to explain that writing it was not inadmissible, but, on the contrary, was very properly received in evidence. *George* v. *Joy*, 19 N. H. 544; *Hersom* v. *Henderson*, 21 N. H. 224. But however that might be in the case of a controversy between mortgagor and mortgagee, the rule excluding parol evidence varying a contract is not applicable in this case, because the defendant was not and does not represent the mortgagor. The parties in this suit are not the parties in the written consent. *Furbush* v. *Goodwin*, 25 N. H. 425, 446, 452.

The defendant claims that the facts disclosed establish a secret trust between the plaintiff and Gilbert Brothers in favor of the latter, or a fraudulent contrivance to hinder, delay, and defraud creditors; that this trust and fraud is an inference of law from the facts disclosed, and consequently the mortgage must be declared void.

The retention of personal property by the former owner, after a sale or mortgage, has never been regarded in this state as conclusive evidence of fraud, but only as *prima facie* evidence, capable of explanation (*Haven* v. *Low*, 2 N. H. 13; *Coburn* v. *Pickering*, 3 N. H. 415; *Ash* v. *Savage*, 5 N. H. 545); and since the enactment of June 22, 1832,—Rev. St., c. 132, s. 2, and Gen. St., c. 123, s. 2,—whereby a record of the mortgage is substituted for change of possession, the continued possession by the mortgagor cannot furnish even *prima facie* evidence of any fraudulent intent. So, also, it is not contrary to, but in accordance with, the policy of our law and the express provisions of our statutes, to permit a mortgagor to sell the mortgaged property, the consent of the mortgagee being signified in writing and recorded. Gen. St., c. 123, s. 13. The law prescribes no limitation as to the character of the property, provided it be of a personal nature. It may be a single chattel, or a stock of goods in a retail store; and the law does not require that the written consent should express the stipulations or the understanding of the parties with regard to payment of the proceeds of the sale.

An honest intention and understanding or agreement must certainly exist between the parties, that the proceeds of the sales shall be applied to the extinguishment of the mortgage debt; and any understanding that the mortgagor shall or may retain possession of the goods, continuing to sell them, as before, for his own benefit, without accounting to the mortgagee for the proceeds, is clearly a trust inconsistent with the legitimate purposes of the mortgage, and establishes a legal presumption of a fraudulent intent to protect the mortgagor in the enjoyment of the property, and to enable him to set his creditors at defiance. Such agreement or understanding, whether contemporaneous with or subsequent to the execution of the mortgage, will render the mortgage void as to the mortgagor's creditors. *Ranlett* v. *Blodgett*, 17 N. H. 298, 304, 305; *Coolidge* v. *Melvin*, 42 N. H. 510, 522; *Putnam* v. *Osgood*, 51 N. H. 192, 202; S. C., 52 N. H. 148. The

existence of a secret trust may be a question of fact; the resulting fraud is an inference of law. But in the present case, as the mere fact of continued possession and subsequent sale of the property by the mortgagor is not even *prima facie* evidence of fraud, or a secret trust, neither is fraud to be conclusively inferred from an omission to declare, in the written permission of sale, that the proceeds are to be applied towards the extinguishment of the debt, and not retained for the use and benefit of the mortgagor. Such an inference would be contrary to the general presumption of innocence and lawful intent.

The principles which control this case are clearly recognized in *Ranlett* v. *Blodgett* and *Putnam* v. *Osgood*, before cited. The doctrine of those cases is, that the trust and fraud, which the law condemns, consist in the mortgagee authorizing the mortgagor to act as owner of the property, and not as agent of the mortgagee, in permitting him to appropriate the proceeds of sales to his own use instead of to the payment of the mortgage-debt. By manifest implication, those cases hold that authority to act as the agent of the mortgagee and not as owner, the mortgagor, as such agent, paying the money to the mortgagee as owner, instead of applying it to his own use, is not a fraudulent trust.

A careful examination of the cases cited by the defendant reveals distinctions so clearly defined as to render them inapplicable to the present case. Many of them, moreover, are controlled by local statutes which have no resemblance to our own, touching the subject under consideration. This want of analogy is particularly obvious in *Collins* v. *Myers*, 16 Ohio 547, 552, *Bishop* v. *Warner*, 19 Conn. 469, 470, and in the New York cases to which we have been referred, which latter are controlled by a statute declaring that " every sale of goods and chattels, unless accompanied by an immediate delivery, and followed by actual and continued change of possession, shall be presumed fraudulent and void as against the creditors of the vendor." *Butler* v. *Stoddard*, 7 Paige Ch. 165; S. C., 20 Wend. 507. A very plain distinction is recognized in *Robinson* v. *Elliott*, 22 Wall. 513, cited by the defendant, in which, considering the peculiar circumstances of the case, the mortgage was declared invalid; but the court (DAVIS, J., p. 524) remarked,—" We are not prepared to say that a mortgage under the Indiana statute would not be sustained, which allows a stock of goods to be retained by the mortgagor, and sold by him at retail for the express purpose of applying the proceeds to the payment of the mortgage-debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors."

In *Conkling* v. *Shelley*, 28 N. Y. 360, the goods remaining in the possession of the mortgagor were to be sold by him and applied to the payment of the mortgage-debt. It was considered that the mortgagor was to be regarded as the agent of the mortgagee, and the proceeds of sales were regarded as applied, whether actually paid over or not; and notwithstanding the peculiar stringency of the New York statute,

it was held that the circumstances did not make the transaction fraudulent *per se.*

In cases of sales of personal property, it is undoubtedly true, that the retention of possession by the vendor is *prima facie* (and, if unexplained, conclusive) evidence of a secret trust—*Kendall* v. *Fitts*, 22 N. H. 1; and it is not a sufficient explanation to show that the sale was really in good faith. *Coolidge* v. *Melvin,* before cited; *Putnam* v. *Osgood*, 52 N. H. 148, 154.

In the case of a recorded mortgage, the retention of possession is, of course, unobjectionable; but the selling of the goods occupies the same position in respect to the mortgage, that the mere retention and use of the goods does in respect to an absolute sale. By our statute, a sale by the mortgagor is as permissible as retention of possession. The permission undoubtedly raises a presumption, *prima facie,* of a secret trust, and the secret trust being shown, the fraudulent intent is conclusively presumed; but as the intention may be explained in the case of retention of property by the vendor after sale, so may the sale of the goods by the mortgagor. *Putnam* v. *Osgood,* before cited. The explanation need not be expressed in the written consent. The settled rule, that the written consent may be explained, necessarily implies that it may be explained by evidence not contained in the writing itself.

The statute which forbids the sale, by a mortgagor, of mortgaged personal property, is prohibitory merely. Its infraction brings a penalty upon the offender (Gen. St., *c.* 123, *s.* 15), but neither the mortgage nor the mortgagee is affected thereby. There is nothing in the statute (*ss.* 13, 15) indicating an intention of the legislature that the mortgage shall be void as against creditors, because the mortgagee's consent indorsed thereon does not contain in its terms something more than the statute prescribes.

There is no secret trust, when it appears from all the evidence that the permitted sale is honestly made for the purpose of extinguishing the mortgage-debt, and not (except incidentally) for the advantage of the mortgagor. Such a sale and such an application of the proceeds has no tendency to hinder, delay, or defraud the unpreferred creditors.

Where the mortgagee, by written and recorded consent, permits the mortgagor, as his agent, to sell the goods as the mortgagee's goods, and to receive the money as the mortgagee's money, the proceeds thus received by the agent being the property of the mortgagee in the hands of his agent, the mortgagor, the transaction is lawful and valid. And an agreement that all this may be done (when a written consent to the sale of the goods is recorded) is a lawful agreement. In the case before us, if no actual fraud or secret trust is disclosed, if the mortgagor, in selling the goods and retaining the proceeds, is regarded simply as the agent of the mortgagee, and if those proceeds, as soon as they reach the hands of the agent, be regarded as applied, and the debt *pro tanto* extinguished, whether the money has actually passed from the hands of the agent to those of the principal or not, it is diffi-

cult to see how any legal inference of fraud or of a secret trust can be said to result from such circumstances.

If it is to be inferred from the language of the case that the shoes which were made by one of the mortgagors were manufactured from stock included in the mortgaged property, we also infer that the proceeds of that labor were added to the stock of goods in the substance of the manufactured article, and so became available for the use and benefit of the mortgagee, like the rest of the property; and we are unable to discover how the fact that the compensation for the maker's labor, expended by him for his support, could diminish the mortgagee's security, or tend to the detriment of other creditors, since an equivalent for the value of that labor was returned in the shape of the manufactured article which went into the general stock in trade.

*Judgment on the verdict.*

STANLEY, J., did not sit.