[Murray, Dibrell & Co. v. McNealy & Cureton.]

# Murray, Dibrell & Co. *v.* McNealy & Cureton.

*Creditors' Bill in Equity to set aside Conveyance as Fraudulent.*

1. *Mortgage of stock for goods, authorizing mortgagor to retain possession and sell for benefit of mortgagee; validity as against creditors.*—A mortgage of a stock of goods, given to secure a *bona fide* debt, which authorizes the mortgagor to retain possession and sell for and on account of the mortgagees, paying over the proceeds of sale at the end of each week, or oftener if required, is not fraudulent on its face.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 15th March, 1888, by Murray, Dibrell & Co., a mercantile partnership doing businss in the city of Nashville, Tennessee, and several other mercantile partnerships, on behalf of themselves and other creditors of McNealy & Cureton, a mercantile partnership doing business in the town of Columbia, Henry county, Alabama; against said McNealy & Cureton, John T. Davis & Son, bankers in said town, and M. S. Smith; and sought to set aside, as fraudulent, a mortgage on a stock of goods executed by said McNealy & Cureton to said Davis & Son, and a subsequent assignment executed by them to said Smith as trustee, conveying the said stock of goods, with all of their other property, for the benefit of their creditors generally, after payment of the mortgage debt to said Davis & Son. The chancellor overruled a demurrer to the bill, for want of equity, but, on final hearing on pleadings and proof, dismissed it; holding that the mortgage was not fraudulent in law or in fact, and that, even if it were fraudulent, the *bona fides* of the secured debt being established, the provision of the assignment giving it a preference was valid. The final decree is now assigned as error.

W. A. SCOTT, for appellants, cited *Lehman, Durr & Co. v. Kelly,* 68 Ala. 192; *Levy & Co. Williams,* 79 Ala. 171; *Com. Bank v. Brewer,* 71 Ala. 574; *Hobbie & Teague v. Owen,* 82 Ala. 466; *Constantine v. Twelves,* 29 Ala. 607;

[Murray, Dibrell & Co. v. McNealy & Cureton.]

*Price v. Mazange,* 31 Ala. 701; *Wiley, Banks & Co. v. Knight,* 27 Ala. 336; *Benedict v. Renfro,* 75 Ala. 121.

J. F. ROPER, *contra,* cited *Benedict v. Renfro,* 75 Ala. 121; *Place v. Langworthy,* 13 Wisc. 629, or 80 Amer. Dec. 758; *Conkling v. Shelly,* 28 N. Y. 360, or 48 Amer. Dec. 348; Pierce on Mortgages of Merchandise, § 43.

SOMERVILLE, J.—The point chiefly discussed, both at the bar and in the briefs of counsel, is the validity of the mortgage executed by the defendants, McNealy & Cureton, to Davis & Son, on November 18th, 1887, transferring to the mortgagees a stock of merchandise then in the possession of the mortgagors, for the purpose of securing a debt described in the instrument. As to the *bona fides* of this debt there is no serious controversy. Nor is any actual fraud established by the testimony, which can in any way vitiate the transfer of the goods. It is contended that the mortgage is rendered fraudulent on its face, by the provision contained in it authorizing the mortgagees, McNealy & Cureton, to continue the sale of the goods, although it is expressly stipulated that such sale shall be exclusively for the benefit of the mortgagees. It is provided that "all moneys arising from the sales of said goods" shall, *eo instanti,* be the property of the mortgagees, and shall be paid over to them at the end of each week, or oftener if required, and shall go as credits on the mortgage debt; the mortgagors expressly agreeing that all such sales "shall be for and on account" of said mortgagees. . If any of the goods are sold on a credit, the accounts are also to pass to the mortgagees as their property, and be credited as so many payments on the mortgage debt.

The law-day is fixed on February 1st, 1888, the day the secured debt fell due.

There is no clause anywhere contained in the mortgage which can be construed, expressly or by implication, as evincing an intention to permit the mortgagors to reserve any benefit to themselves, or any power of disposition over the goods, inconsistent with the idea that the property is not to be held strictly subject to the lien of the mortgage as a *bona fide* security for the debt.

In *Benedict v. Renfro,* 75 Ala. 121; s. c., 51 Amer. Rep. 429, we discussed at length the subject of mortgages on stocks of merchandise, where the mortgagor was permitted to remain in possession, and to sell the goods in due course

[Murray, Dibrell & Co. v. McNealy & Cureton.]

of trade for his own benefit. We held that such a power, accompanied with continued possession, conferred on the mortgagor a dominion over the property, which was utterly inconsistent with and subversive of the mortgage lien, rendering the mortgage itself virtually a conveyance "made in trust for the use of the person making it", and stamping it with invalidity for fraud, as tending inevitably to hinder and delay the creditors of the mortgagor.

Anticipating such a case as that now before us, we then said: "We are not to be understood as intimating in this opinion, that a mortgage of merchandise would be rendered conclusively invalid, where the mortgagor is in good faith left in possession of the goods with power to sell for the exclusive use of the mortgagee, holding the proceeds of sale for his benefit. In such a case, he may well be deemed the mere agent of the mortgagee, acting for him and in his behalf." In *Robinson v. Elliott*, 22 Wall. 513, 524 (1874), where the subject is elaborately discussed by the Supreme Court of the United States, it was observed by Mr. Justice Davis, that the court was not prepared to say that a mortgage would not be sustained, "which allows a stock of goods to be retained by the mortgagor, and sold by him at retail, for the express purpose of applying the proceeds to the payment of the mortgage debt." "Indeed, it would seem," he observed, "that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors." The mortgage in that case was held fraudulent and void, on the same ground stated by us in *Benedict v. Renfro*, 75 Ala. 121, *supra*, that the mortgagors were permitted to deal with the property as their own, without covenant to account with the mortgagees for the proceeds of sale, and without recognition that the property was sold for their benefit.

The principle controlling this case is not distinguishable from that decided in *Perry Ins. Co. v. Foster*, 58 Ala. 502. There, an assignment was made conveying to a preferred creditor, in the early part of the year, a plantation, and the crops to be raised during the year, and the personal property used in cultivating them. It was stipulated that the property should remain in the possession of the grantors, to be used by them in making the crops, which were to be delivered to the grantee as soon as made and gathered, the proceeds to be applied to the payment of the secured debts. No actual fraud being shown, the assignment was sustained,

[Murray, Dibrell & Co. v. McNealy & Cureton.]

on the ground that it was contemplated that the whole property was to be devoted to the satisfaction of the mortgage-debt, without the reservation of any benefit to the grantor. Said BRICKELL, C. J.: "If the crops to be produced are, with the existing property, to be devoted to the payment of the secured debts, it has not been supposed s ich a stipulation is a reservation of a benefit to the debtor, though thereby the *residuum* which must revert to him may be increased. It is not unusual in assignments to provide that the assignees, or the debtor under their direction, may continue the business; and if it appears this is done, not for the benefit of the debtor, and to the prejudice of the unsecured creditors, but to promote the interest of the creditors who are preferred, they are sustained." Many cases are cited illustrative of the principle involved, and sustaining the conclusion reached by the court.

The precise question here involved has been many times considered by the New York Court of Appeals. It arose in *Conkling v. Shelly*, 28 N. Y. 360; s. c., 48 Amer. Dec. 348 (1863), where the court sustained such a mortgage of a stock of merchandise as valid—it being declared to be neither unlawful, nor fraudulent *per se*. It was said: "Such an agreement *made the mortgagors agents of the mortgagees*. Their possession, and their sales, were in effect those of the mortgagees. It was as if the latter had taken possession, and placed a third person in charge as agent to sell and account to them. They could not have escaped from crediting on their indebtedness the proceeds of sales made by such an agent, because he had fraudulently or dishonestly misapplied or employed the money." A like conclusion was reached in *Ford v. Williamson*, 24 N. Y. 215, and *Miller v. Lockwood*, 32 N. Y. 293. The question again came up before the same court in *Brackett v. Harvey*, 91 N. Y. 215, decided as late as 1883; and the doctrine declared in these cases was reaffirmed, without dissent by any member of the court. It was said by Finch, J.: "These cases went upon the ground, that such sale and application of proceeds is the normal and proper purpose of a chattel mortgage, and within the precise boundaries of its lawful operation and effect. It does no more than to substitute the mortgagor as the agent of the mortgagee to do exactly what the latter had the right to do, and what it was his privilege and his duty to accomplish. It devotes, as it should, the mortgage property to the payment of the mortgage debt."

[Ware v. Manning.]

The controlling principle of the cases is, that the mortgagee is not prohibited by any rule of law, or of public policy, from employing the mortgagor as his *agent* to sell the goods on his (the mortgagee's) exclusive account, without authority to use or appropriate the proceeds of sale to any other purpose than paying the mortgage debt. A like principle has been recognized by the English courts, where trustees, under general assignments made for the benefit of creditors, have been permitted to stipulate for the employment of the debtor as their agent to dispose of the goods.—*James v. Whitbread*, 5 Eng. L. & Eq. 431.

The New York doctrine seems to us to be sound in principle, and it has been followed in Virginia, New Hampshire, Illinois, Connecticut, Wisconsin, Ohio, and other States, and in the Circuit Courts of the United States.—*Marks v. Hill*, 15 Gratt. 400; *Wilson v. Sullivan*, 58 N..H. 260; *Goodheart v. Johnson*, 88 Ill. 58; *Kendall v. Carpet Co.*, 13 Conn. 383; *Fisk v. Harshaw*, 45 Wisc. 665; *Kleine v. Katzenberger*, 20 Ohio St. 110; s. c., 5 Amer. Rep. 630; *Hawkins v. Bank*, 1 Dillon, 462; *Overman v. Quick*, 8 Bissell, 134; Pierce on Mortg. Merchandise, §§ 139, 43–49.

The mortgage is not void on its face, and there is nothing in the testimony which proves that it was intended otherwise than as a *bona fide* and fair appropriation of the debtor's property to secure a debt honestly due, without reservation of benefit to the grantors.—*Gazzam v. Poyntz*, 4 Ala. 374; s. c., 37 Amer. Dec. 745. The deed of assignment made January 25th, 1888, by which McNealy & Cureton, the mortgagors, reaffirmed their assent to the mortgage of November 18th, 1887, need not be noticed, as it exerts no influence on the question in hand.

The decree of the chancellor correctly pronounces the mortgage free from all fraudulent intent and legally valid, and is affirmed.