# Owens *v.* Hobbie & Teague.

*Bill in Equity by Creditors, to set aside Fraudulent Sale of Goods.*

1. *Sale of goods by insolvent debtor to creditor; validity as against other creditors* —When an insolvent partnership conveys its entire stock of goods to one of its creditors, partly in payment of an antecedent debt, and partly for money paid or loaned at the time. the validity of the transaction, as against other existing creditors, is to be determined by the rules applicable to a purchase on an entirely new consideration.

2. *Mortgage with reservation of possession to mortgagor, and power to sell until default; validity as against creditors.*—In a mortgage of a stock of goods, given to secure a debt for money loaned to carry on the business, a stipulation that the mortgagee may take possession on default is an implied reservation of the possession to the mortgagor until default, and power to sell in the meantime is a necessary inference; and the reservation of these benefits to the mortgagor stamps the mortgage as fraudulent in law against creditors, notwithstanding a parol agreement that the proceeds of sales shall be paid over to the mortgagee.

3. *Proof of consideration of conveyance.*—When a conveyance of a stock of goods by an insolvent partnership to one of its creditors, which is attacked for fraud by other creditors, recites as its consideration an indebtedness for money loaned, as evidenced by note and mortgage executed three or four weeks before, the grantee will be required to establish the existence and *bona fides* of his debt by clear and satisfactory proof,—clearer and more convincing when the parties are closely related by blood or marriage; and the production of several due-bills signed in the partnership name, without other proof of the particular items and circumstances, will not be sufficient, when the testimony of the two witnesses testifying to material facts is conflicting and irreconcilable.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 3d January, 1885, by Hobbie & Teague, partners doing business as merchants in

[Owens v. Hobbie & Teague.]

the city of Montgomery, as creditors of the late firm of
Hunt & Owens, against John A. Hunt, John A. Owens, Mrs.
E. V. Owens, and Mrs. S. E. Hunt; and sought to set aside,
on allegations of fraud, a transfer, and sale of the entire
stock of goods belonging to Hunt & Owens, to said John A.
Owens. The firm of Hunt & Owens was engaged in busi-
ness as merchants in the town of Greenville, and was at
first composed of John A. Hunt and Samuel Owens.
Samuel Owens, who had married the daughter of John A.
Hunt, died about the 1st October, 1884; but the business
was carried on afterwards, without any change in the part-
nership name; and the stock of goods was sold and trans-
ferred to John A. Owens, by a conveyance dated December
30th, 1884. The consideration of the sale and conveyance,
as therein recited, was an indebtedness of $3,800, from Hunt
& Owens to said John A. Owens, which was evidenced by
the promissory note of the firm, dated December 11th, 1884,
payable on the 1st January, 1885, and secured by a mort-
gage on the stock of goods, of even date with the note.
The note and mortgage were each signed by Hunt & Owens,
S. E. Hunt, and E. V. Owens; and the conveyance of the
stock of goods, by S. E. Hunt, E. V. Owens, and J. A. Hunt.
Samuel Owens was the son of said John A. Owens, and Mrs.
E. V. Owens was his widow, and also the daughter of said
John A. Hunt; and S. E. Hunt was the wife of said John
A. Hunt. It was alleged on the part of the defendants that,
from about the 1st April, 1884, the firm of Hunt & Owens
was composed of Mrs. S. E. Hunt and Mrs. E. V. Owens,
who had succeeded by purchase to the interests of their
respective husbands. The complainants' debt amounted to
about $700, and consisted of items for goods sold, as per
accounts rendered, to the firm of Hunt & Owens, between
the 4th September and the 1st December, 1884; and they
insisted that, if there was ever any change in the partners
composing that firm, they had no notice of it.

On final hearing, on pleadings and proof, the chancellor
rendered a decree for the complainants; and his decree is
now assigned as error.

R. E. STEINER, and STALLINGS & WILKINSON, for the appel-
lants, cited *Hodges Bros. v. Coleman & Carroll*, 76 Ala. 103;
*Leinkauff & Strauss v. Morris*, 66 Ala. 406; *Crommelin v.
McCauley*, 67 Ala. 542.

GAMBLE & RICHARDSON, *contra.*

CLOPTON, J.—The point of contention between the parties, the sole question argued by counsel, relates to the *bona fides* of a sale of the stock of merchandise of the firm of Hunt & Owens to appellant, which the appellees, being creditors, seek by the bill to have declared fraudulent. Whoever may have constituted the firm, partnership creditors have a right to pursue the partnership effects, if they have been fraudulently transferred by those claiming to be the members. The assumption that the case falls within the operation of *Hodges v. Coleman*, 76 Ala. 103, rests on a misconception or a misapplication of the principles settled by that case. The sale was made December 30, 1884, in discharge and satisfaction of a note given to John A. Owens about three weeks previously, for thirty-eight hundred dollars, payable January 1, 1885, and of a mortgage on the same merchandise to secure its payment, the consideration of which, as alleged, was an antecedent indebtedness of the firm, and money presently loaned. This brings the case more appropriately within the influence of the rule established in *Levy v. Williams*, 79 Ala. 171, where we held, that when a creditor purchases property from his debtor, a part of the consideration being an antecedent debt, and a part money paid, the rules applicable are the same as if the purchase had been wholly on a new consideration.

The character of the previous mortgage has an important and material bearing on the nature of the sale so speedily following. The mortgage conveys a stock of goods and merchandise, and contains a stipulation, that the mortgagee is authorized to take possession on default being made; clearly implying by its terms, that the mortgagors had the right of possession until that time. Money was loaned to enable them to carry on the business, and there was a parol agreement that they should turn over the proceeds of the sales to the mortgagee. Power to sell in the meantime is a necessary inference, and the reservation of a benefit, which stamps the mortgage as fraudulent in law as against the other creditors.—*Benedict v. Renfro*, 75 Ala. 121. The oral agreement does not impart validity. The mortgage, and the note, to secure which it was given, led to and constituted the basis of the sale. Though a valid sale may have been made notwithstanding the invalidity of the mortgage, their apparently intimate and immediate connection may be considered, in connection with the other circumstances, as tending to discover the intent of the parties in making both the mortgage and the sale. The recital of the mortgage, in the absolute conveyance of the goods, calls for explanation;

for proof that an instrument, which the law regards as fraudulent, was not an element of the sale.

The recited consideration of the conveyance is an indebtedness for money loaned by the grantee to Hunt & Owens. When a creditor acquires a preference or advantage by purchasing property from his debtor in payment, which operates to hinder and delay other creditors, and, perhaps, to defeat the collection of their demands, and the transaction is assailed, he will be required to establish, by clear and satisfactory proof, the existence and validity, the *bona fides*, of his debt; and if a connection by blood or marriage is shown, clearer and more convincing proof will be demanded. Passing without special notice many facts and circumstances of a suspicious character—such as the undisclosed transfer of his interest in the partnership by Samuel Owens to his wife, in April, 1884; the business carried on thereafter by two married women, whose disabilities of coverture had not been removed until his death, and afterwards by the same persons until the sale of the goods; of which fact the creditors, who continued to sell merchandise to Hunt & Owens, were kept in ignorance, but which were known to appellant—we shall briefly consider the sufficiency of the evidence to establish the justness of the indebtedness, which is the consideration of the sale. General statements that the indebtedness consisted of money borrowed at different times, and which was used in discounting bills and paying the general expenses, are insufficient. The other creditors have a right to demand of the purchasing creditor, that he shall show, what is or should be peculiarly within his knowledge and power, the time, circumstances, and consideration of his debt; how, when, and on what account it accrued. To supply the deficiency, certain due-bills signed by Hunt & Owens were introduced in evidence, but without satisfactory proof of their genuineness. The record does not inform us by what individual they were signed, under what circumstances, or at what times, other than as they purport on their face. Their execution is not proved satisfactorily, though the appellant, both partners, and John A. Hunt, the husband of one of them, who had general management of the business, were all examined as witnesses. The circumstances attending the giving of the due-bills, as collected from the testimony of John A. Owens, are, that during the connection of Samuel Owens with the firm, he kept his money in a drawer in the safe of Hunt & Owens, and continued to do so after his retirement, with an understanding that, if the firm used any of his money, a due-bill should be put in the drawer representing the amount; and

that he had no idea they had used his money so rapidly, until they had taken the larger portion of the amount used. The inference is, that he had no personal knowledge of the use of the money, or of the due-bills, other than by his finding them in the drawer. Garrett, who was the book-keeper, and, as the partners state, managed the business, testified that he was present when some of the money was obtained, the larger portion of which was paid to John A. Hunt, and some to the witness; that he did not sign the due-bills, and does not know who signed them, but presumes John A. Hunt, as he was authorized to sign papers; that he can not state the date and amount of each loan; and that the money received was not entered on the books of the firm, because he was not instructed to enter it, and many times did not know the amount received. This witness further testifies, that John A. Owens kept no money in the safe after Samuel Owens retired from the business. All the due-bills, except two which are without date, bear date after Samuel Owens had dissolved his connection with the firm.

The conclusion from the evidence of this witness is, that Owens personally delivered the money, either to Hunt or the witness, and that there was none in the drawer; so none could have been taken therefrom. This irreconcilable inconsistency and conflict materially impairs the weight of the evidence as to the existence and validity of the indebtedness. The money may have been really loaned; we will not say it was not; but, when the connection between the parties, and all the circumstances, are considered, the *bona fides* of the consideration of the sale should be shown by clearer and more convincing proof, against creditors whose debts and rights are established. We are not convinced that the chancellor erred in his conclusion as to the insufficiency of the proof.—*Hubbard v. Allen*, 59 Ala. 283.

Affirmed.