# Ullman *v.* Myrick & Bowman.

*Trespass against Attaching Creditors, by Purchaser from Debtor.*

1. *Partnership debts; payment by partner, with partnership assets.* Every partnership, whether commercial or non-trading, may incur debts in the line of its business; and either partner may, without the express assent or authority of the other, transfer partnership property or assets in payment of such indebtedness.

2. *Sale of goods by insolvent debtor to creditor; validity as affected by subsequent acts.*—A debtor who is insolvent, or in failing circumstances, may lawfully sell and transfer property, at its fair value, in payment of a *bona fide* existing debt; and the transaction being valid at the time, its validity is not affected by any subsequent acts of the purchasing creditor, or an agent left by him in possession, in regard to the use or disposition of the property; nor are his rights affected by any unauthorized acts of his agent.

3. *Retention of possession by vendor as badge of fraud.*—The retention of possession by the vendor of personal property, after an alleged sale to a creditor, is a badge of fraud, and casts on the purchasing creditor the *onus* of explaining it; but proof of the fact that the

[Ullman v. Myrick & Bowman.]

property was left in the possession of one of the vendors only as a mere matter of convenience, or for other temporary purpose,or as agent of the purchaser, with power to sell on his account, is a sufficient explanation; and the fact that a discretion is given to such agent, as to the time, manner and terms of sale, does not render the transaction fraudulent.

4. *Evidence connecting defendants, attaching creditors and indemnitors, with levy of attachment.*—In trespass against attaching creditors and sureties on bond of indemnity given to the sheriff, by a person claiming under a prior purchase from the debtor, it is competent for the plaintiff to establish the defendants' connection with the levy, by showing that the sheriff, when first informed of the purchaser's claim, declined to levy on the property, but returned the next day and made the levy; that he afterwards went to the attorney of the attaching creditors, and threatened to discharge the levy unless indemnified, and that the bond of indemnity was then given.

5. *Cumulative evidence; error without injury.*—The exclusion of the declarations of a person in possession of personal property as evidence, if erroneous, is not a reversible error, when the record shows that he was afterwards introduced as a witness, and testified to the same facts.

6. *Knowledge of purchaser's claim by attaching creditor, as element of damages.*—Knowledge by the attaching creditor, at and before the levy of the attachment, that plaintiff claimed the property under a prior purchase from the debtor, is material on the question of damages in an action of trespass founded on the levy; and having testified in his own behalf that he had no knowledge of the claim, he may be impeached and contradicted on that point.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This action was brought by Myrick & Bowman, suing as partners, against A. Ullman and others, to recover damages for an alleged trespass; and was commenced on the 17th August, 1888. The trespass consisted in procuring the levy of an attachment by the sheriff on several mules, plows, wheelbarrows, &c., as the property of Nesbit & Nesbit, which the plaintiffs claimed under a prior purchase from them. Nesbit & Nesbit were railroad contractors, engaged in business as partners. The attachment against them was sued out by Ullman & Co., a partnership composed of two of the defendants in this case; and it was levied on the 26th April, 1888, on the property here involved. By amendment of the complaint, the claim for damages on account of the mules was reduced to one, the names of the others being stricken out. The plaintiffs claimed the property under a purchase from Nesbit & Nesbit, on the 20th April, 1888, in payment of an existing debt; and, according to their evidence, a small balance still remained due to them. The settlement between them was negotiated and made between one of the plaintiffs and E. A. Nesbit, one of the two partners composing the firm of Nesbit & Nesbit, in the absence and without the knowledge of his co-partner; but the plaintiffs adduced evidence showing that

J. C. Nesbit, the other partner, afterwards ratified the sale. At the time this sale was made, Nesbit & Nesbit were in failing circumstances, if not insolvent; and the defendants attacked its validity, on the ground of fraud, and on the ground that one partner had no authority to make it without the assent and concurrence of the other.

The evidence showed that, after this sale, the mules and some other property were left by plaintiffs in the possession of E. A. Nesbit and K. Woodruff; but Myrick testified that he left the property in their possession "as agents of Myrick & Bowman, to sell or dispose of the best they could, and to account to Myrick & Bowman for it." The evidence showed, also, that one of the mules was sold or transferred by Woodruff, on that day or the next, to one Griffin, partly for cash, and partly in payment of a debt which Nesbit & Nesbit owed him; also, that the mule *Frosty*, the only one involved in this suit after the amendment, was delivered or hired by said E. A. Nesbit to one Marable, of the firm of Marable & Hicks, or Harris & Co., to whom Nesbit & Nesbit were indebted, and was in his possession when the attachment was levied on it; also, that he had sold or disposed of three other mules in payment or settlement of debts owing by Nesbit & Nesbit; but said Nesbit testified, in reference to these three, that he had accounted to Myrick & Bowman for them, "but did not say how he had accounted." During the examination of said Nesbit as a witness, plaintiff asked him to state "what the sheriff did and said at the time of the levy on the property;" and he answered: "I told the sheriff this property did not belong to Nesbit & Nesbit, and that some of the parties to whom it belonged were present, and they could probably satisfy him. He had some conversation with the other parties, and went away without taking the property; but he came back the next day, or day after, and seized the wheelbarrows, plows, &c., and then rode down towards Harris & Co.'s, who then had the mules." The defendants objected and excepted to the admission of each part of this evidence, because it appeared they were not present at the time. During the examination of said Woodruff, plaintiffs asked him "if he ever had a conversation with the sheriff and Ellis & Stevenson, attorneys of Ullman & Co., relative to holding this property under the attachment;" and he, answered: "A few days after the levy, I had a conversation in Jacksonville with the sheriff and Mr. Stevenson, and told them how the trade was. The sheriff said he would not hold the property without an indemnifying bond. Stevenson said he would telegraph Ullman, and afterwards came back and said Ullman gave the

bond." The defendants objected and excepted to the admission of this evidence, because it appeared that they were not present at the time.

The court gave the following (with other) charges to the jury, at the instance of the plaintiffs: (1.) "If the jury find from the evidence that the property sued for was left by Myrick & Bowman in the possession of E. A. Nesbit, or of Nesbit and Woodruff, as their agents, and they or either of them held such property as their agents; then the possession of the agent was the possession of Myrick & Bowman, and the fact that Marable and Hicks, or Harris & Co., were working the mule *Frosty*, or had possession of said mule when the sheriff levied on it, will not prevent plaintiffs from maintaining this action, unless they authorized their agent to make said contract, and to transfer to Marable & Hicks, or Harris & Co., the right to the possession of the mule, and that they had such right of possession, as against Myrick & Bowman, at the time of the levy." (2.) "If the jury find from the evidence that the debt of Myrick & Bowman was a valid subsisting debt against Nesbit & Nesbit, and that they bought the property in payment of said debt, and gave full value for it, and that no interest in it was reserved for Nesbit & Nesbit; then the property became the property of Myrick & Bowman, and although E. A. Nesbit may have used some of it afterwards in settlement of the debts of Nesbit & Nesbit, and accounted to Myrick & Bowman for the same, this would not defeat plaintiffs' action against Ullman and others." (3.) "If the jury conclude from the evidence that E. A. Nesbit hired the mule *Frosty* to Marable and others under a contract that they should work said mule until a debt which Nesbit & Nesbit owed them was paid; this would not prevent plaintiffs from maintaining this action, unless they further find that plaintiff authorized such trade to be made, and the debt of Nesbit & Nesbit to be so settled, prior or at the time of the transaction." (4.) "If the jury find from the evidence that Myrick & Bowman simply authorized their agent to sell or dispose of said mule, and account to them for the proceeds; this alone would not authorize the agent to hire out the mule in payment of a debt of Nesbit & Nesbit, and the fact that he did so, if it be a fact, would not alone defeat this action as to said mule."

The defendants duly excepted to each of these charges as given, and also to the refusal of each of the following charges, which were asked by them in writing: (1.) "If the jury believe the evidence, their verdict must be for the defendants." (2.) "If the jury believe all the evidence, the plaintiffs are not entitled to recover damages for the value of the mule."

(3.) "As matter of law, under the evidence, the partnership of Nesbit & Nesbit was a non-trading one; and before plaintiffs would be entitled to recover, they must reasonably satisfy the jury from all the evidence that J. C. Nesbit gave his express consent to the sale of the property to them, and the burden of proof is on plaintiffs to establish this fact." (4.) "If the jury believe from all the evidence that J. C. Nesbit did not give his express consent to the sale to Myrick & Bowman, they must find for the defendants, and the burden of proving this fact is on plaintiffs." (5.) "If the jury believe from all the evidence that Nesbit remained in possession of the property alleged to have been sold to Myrick & Bowman, after said alleged sale, with authority to sell or dispose of the property as he might think best, and account to them for the proceeds of said property; then the law says that this is *prima facie* evidence of fraud, and casts on the plaintiffs the burden of proof to reasonably satisfy the minds of the jury that the sale was fair and honest; and if the plaintiffs have failed to satisfy the jury to a reasonable certainty from all the evidence that the sale was fair and honest, their verdict must be for the defendants."

The assignments of error cover all the rulings to which exceptions were reserved.

JOHN H. DISQUE, for appellant.

DORTCH & MARTIN, *contra*.

McCLELLAN, J.—We can conceive of no partnership, whether commercial or non-trading, which may not, in the line of the partnership business, incur debts. It is not at all controverted in this case that the partnership of Nesbit & Nesbit did incur, or was liable for, the claim of Myrick & Bowman, which, it is alleged, was satisfied *pro tanto* by the transfer of firm assets to them. We regard it as thoroughly well settled law, that a partnership, or any one of its members, without express authority from his co-partners, may transfer a part of the partnership property in payment of a debt of the firm, and this wholly regardless of the non-trading character of the concern. The creation of a debt being within partnership competency, it is in the line and scope of the partnership business to pay debts, either with money or other property; and being thus in furtherance of the joint venture, it is competent for one partner to apply the funds, or other property of the partnership, to the discharge of its indebtedness.—Parsons on Partnership, 180, and authorities cited; *Cullum v. Bloodgood*, 15 Ala. 34; *Hirschfelder v. Keyser*, 59 Ala. 338. Whether

one partner may make a general assignment for the benefit of creditors, is a different question, and one not involved here. *Adams v. Thornton*, 82 Ala. 260.

That Nesbit & Nesbit, though insolvent and in failing circumstances, had the right to sell, and Myrick & Bowman the right to buy, the property in controversy, in payment of a *bona fide* pre-existing debt—the debt being satisfied to the extent of the fair value of the property—is, of course, unquestioned. If the plaintiffs did so purchase the property, nothing they afterwards did with or in respect to it could at all affect the validity of the sale, or their title thereunder. It was entirely competent for them to constitute E. A. Nesbit and Woodruff, or either of them, their agents to hold and dispose of the property, and to account to them for the proceeds of it; and neither this fact, nor the fact that a discretion as to the time, manner, terms, &c., of the sale was lodged in the agent or agents, would suffice to impeach the transaction on the ground of fraud.—*Murray v. McNealy*, 86 Ala. 234. E. A. Nesbit, if he was the agent of plaintiffs at all in respect to this property, was a special agent, with limited and defined powers, beyond which he could not bind his principals. He was their agent to sell, to collect the price for which he sold, and to pay the proceeds of such sale over to the plaintiffs. He had no authority to pledge the property to secure a debt due from himself, or from Nesbit & Nesbit. He had no authority even to use the property, and certainly none to rent or hire it out to third persons, in payment of his own or the debt of his firm. And his contract to that effect with Marable & Hicks, or Harris & Co., was not binding on plaintiffs, nor could it in any degree affect their title.—*Medlin v. Wilkerson*, 81 Ala. 147; *Singer Man. Co. v. Belgart*, 84 Ala. 519.

The unexplained retention of the possession of personal property, which, it is alleged, has been sold to a creditor in payment of a debt, by the vendor, is, when the transaction is drawn in question by another creditor, a badge of fraud going to the fact of sale and the sufficiency of the consideration, casting upon the purchaser the *onus* of explaining the vendor's continued possession, so as to make that fact consist with the *bona fides* of the sale. This burden is discharged, when it is shown that the vendor holds the property for and only as the agent of the vendee, either for the latter's mere convenience, as, for instance, to afford him a better opportunity to remove it, or for the purposes of sale by the agent on account of the principal. A possession so explained affords no evidence or presumption of fraud, *prima facie*, or otherwise. The agency of the vendor for the vendee, devolving upon the former the

duty of selling the property for his principal, transferring to the purchaser his principal's title, and paying the purchase-money to his principal, fully rebuts any presumption arising from the naked fact of continued possession that a benefit had been reserved to the vendor.—*Tompkins v. Nichols*, 53 Ala. 197; *Kirksey v. Crawford*, 55 Ala. 282; *Danner Land & Lumber Co. v. Stonewall Ins. Co.*, 77 Ala. 184; *Murray v. McNealy, supra.*

The several rulings of the trial court upon the charges given and refused, find justification in one or another of the principles stated above; and the exceptions reserved thereto are untenable.

Whether the evidence offered for the purpose of showing that J. C. Nesbit consented to the sale made by his partner to the plaintiffs was competent or not, is an immaterial inquiry on this appeal. We have seen that E. A. Nesbit had the power to make the sale, irrespective of his co-partner's consent; and if error was committed in the admission of the evidence in question, the appellant was not, and could not have been, injured by it.

Several exceptions were reserved to the admission of evidence which tended to show that the sheriff at first declined to levy the attachment on the property which Myrick & Bowman claimed to have purchased from Nesbit & Nesbit, but subsequently returned and took possession of it under the writ. The action is for the joint trespass of certain persons who executed to the sheriff an indemnifying bond, conditioned to save him harmless in the event the property levied on should not belong to the defendants in attachment; and it proceeds on the theory, that the bondsmen induced and procured the sheriff to make the wrongful levy complained of. The evidence referred to tended to support this theory, and was properly admitted to show the connection of the defendants with the act of the sheriff, and hence their responsibility therefor. On the same principle, and for a like purpose, what passed between the sheriff and the attorneys of the defendants with reference to the levy in question, tending to show that but for the interference of the defendants, through their attorneys, the officer would not have seized the property of the plaintiffs, was competent and properly admitted.

It was competent for the defendants to show that some of the property in controversy had remained in the possession of E. A. Nesbit, or Nesbit & Nesbit, after the alleged sale to Myrick & Bowman, and had been held and treated by them as the property of Nesbit & Nesbit, as these facts, unexplained, as we have seen, tended to impeach the sale to the

plaintiffs. The property being found after the alleged sale in the possession of Marable & Hicks, it may be that it was proper to receive their declarations explanatory of their possession, and to the effect that it had been hired to them by E. A. Nesbit to pay an indebtedness of Nesbit & Nesbit to them. Even if it be conceded that these declarations should not have been excluded, which we do not decide, the bill of exceptions shows that the same facts were deposed to by Marable and Hicks, as witnesses on the trial. The proposed testimony as to their declarations made out of court may be considered, therefore, as merely cumulative evidence, the exclusion of which, even if erroneous, will not work a reversal of the judgment, when, as here, it is quite apparent that the declarations excluded were of less probative force than the sworn statements of the persons who made them, and could not have given any additional strength to the testimony of the fact in question.—*Dowling v. Blackman*, 70 Ala. 303; *Tayloe v. Bush*, 75 Ala. 432.

The knowledge of Ullman, who was one of the plaintiffs in attachment, and who is sued in this action for causing the sheriff to levy on property of third persons, that the property was claimed by others, was material on the question of punitive damages, which it is sought to recover in this case. He having testified that he had never heard that third persons claimed the property, until after the institution of this suit, it was entirely competent for the plaintiffs to contradict him in the manner in which they attempted to do so, as shown by the bill of exceptions. It was not an effort to contradict the witness as to an immaterial statement made by him.

We find no error in the record, and the judgment of the Circuit Court is affirmed.