# Thornton v. Cook, et al.

*Trespass for Wrongful Levy of Attachment on Stock of Goods.*

1. *Mortgage of merchandise good between parties.*—A mortgage on a stock of goods executed by a solvent person reserving the right of possession, and sale of the goods, is not void as to subsequent creditors and a subsequent sale in good faith of the goods to pay an honest debt secured by such mortgage, is not void.

2. *General charge improper when there is conflict in evidence.*—If there is a substantial conflict in the evidence bearing on any material issue in the case, such issue must be submitted to the jury.

2. *Conditional sale.*—Where one agrees to furnish another with goods to be sold by the latter as the agent of the former at wholesale prices, to be accounted for as the sales are made and prices received, the title to the goods until they are disposed of remains in the person furnishing them to the agent.

Appeal from Jefferson Circuit Court.
Tried before Hon. James B. Head.

This was an action of trespass by T. F. Thornton against J. C. Cook and others to recover damages for a wrongful taking of goods alleged to be the property of the plaintiff.

The plaintiff testified that in January, 1880, one J. H. Pickett owed him six hundred dollars and conveyed to him by mortgage a stock of goods to secure the payment of the debt. This mortgage was never recorded and Pickett continued in possession of the goods, carrying on the business

[Thornton v. Cook, et al.]

as usual, until the 29th of May, 1890, when plaintiff went from his store at Birmingham to Pickett's store at Pratt Mines, carrying with him a bill of sale already prepared, conveying the stock of goods in payment of three hundred and eighty-five dollars, which was the balance due on the mortgage debt. About an hour after Pickett executed the bill of sale, the parties executed another instrument which is as follows: "Birmingham, May 29th, 1890. Agreement entered into between T. F. Thornton of the first part and J. H. Pickett of the second part. The said T. F. Thornton of the first agrees to furnish said J. H. Pickett of the second part with goods to be sold by said J. H. Pickett as said Thornton's agent, at a reasonable wholesale market value, and for which said J. H. Pickett is to account to said Thornton, as his agent, at said wholesale market value in whatever amount he gets. The mutual consent is the mutual consideration." After the execution of this agreement, Thornton left the goods in Pickett's charge; and that between this date and the date of the levy of the attachment in favor of Allen, Redd & Co., Thornton furnished said Pickett other goods, and that Pickett afterwards paid him part of the amount due thereon. It was further shown by the evidence introduced that on, to-wit, June 24th, 1890, Allen, Redd & Co., to whom the said Pickett was indebted by waiver notes, had issued attachments against said Pickett, which attachments were levied on the stock of goods then in Pickett's possession. The testimony for the defendants tended to show that the said Pickett, after the execution of the above agreement, continued to do business as he had done before, his sign being the same, and that he bought goods from other merchants than Thornton; but there was testimony tending to prove that these goods were not commingled with the others. The attachments were issued by a justice of the peace, and levied by a constable, and the action was brought by Thornton against the constable making the levy, Allen, Redd & Co., and the sureties on the indemnity bond. Upon the introduction of all the evidence, the court, at the request of the defendants in writing, gave the general affirmative charge in their behalf, and refused to give the general affirmative charge in behalf of the plaintiff. Both of these rulings were separately excepted to by the plaintiff.

MOUNTJOY & TOMLINSON, for appellant, insisted that the general charge was erroneous, citing *Smoot v. R. R.* 67 Ala. 13; *R. R. v. Small*, 70 Ala. 499; *Seale v. Edmundson*, 73 Ala. 295.

[Thornton v. Cook, et al.]

GILLESPY & SMYER, for appellee, insisted that the mortgage being fraudulent the sale was void, and there was a reservation to the seller, citing *Stephens v. Regenstein*, 89 Ala. 561; *McDowell v. Steele*, 87 Ala. 493; *Owens v. Hobbie*, 82 Ala. 466; *Hobbs v. Bibb*, 2 Stew. 54.

McCLELLAN, J.—It appears that at the time of the sale by Pickett to Thornton, the former owed debts amounting to $1,200 and the only property he then owned was the stock of goods worth from $350 to $400 which he sold to Thornton; but it does not appear that Pickett owed any debts, except that due to Thornton, when he executed the mortgage to the latter four months previous to said sale on what property he then had further than that he then owned a stock of goods worth less than $1,000. For aught that appears, in other words, it may be that when Thornton's mortgage was executed, Pickett owed no other debt than that secured thereby, and that, whether otherwise indebted or not, he was not then insolvent or in failing circumstances, but had abundant means to meet all his liabilities. On this state of the evidence, it can not be said that the mortgage to Thornton was fraudulent and void even though a benefit was thereunder reserved to the mortgagor.—*Hayes v. Wescott*, 91 Ala. 143, 149 *et seq.*

Moreover, if it be conceded that this mortgage was executed under such circumstances with reference to Pickett's pecuniary condition that the reservation of a benefit to him renders it fraudulent and void, it does not follow, as matter of law, that the subsequent sale of the stock of goods covered by it in absolute payment of the debt it was intended to secure is also void. The fraudulent character of the mortgage, so long as the *bona fides* of the debt is not impeached, would be, at most, a circumstance to which the jury might look in determining whether the subsequent sale was fraudulent; but if Pickett justly owed Thornton a debt equal to the value of the stock of goods, and sold the goods to him in absolute payment thereof, reserving no benefit to himself in the transaction, the sale must stand regardless of any covinous intent that may have tainted the mortgage he had previously given to secure the debt. An attempt by fraudulent devices to secure the payment of an honest debt does not, we think, destroy the justness of the debt itself or deprive the creditor of any right he would otherwise have had to realize on his claim, but only invalidates whatever is done to that end of a fraudulent character. So that the fact, if indeed it be conceded to be a fact, that the mortgage from

[Thornton v. Cook, et al.]

Pickett to Thornton was void by reason of its reservation of a benefit to the former, or for any other reason not affecting the fair character of the debt intended to be secured thereby, may be left out of view in passing upon the correctness of the trial court's action in giving the affirmative charge for the defendants, since it could have been no more than a badge of fraud, a circumstance of suspicion to be submitted to the jury.—*Owens v. Hobbie & Teague*, 82 Ala. 466, 468.

With respect to the sale itself there is such conflict in the evidence or such conflicting inferences deducible from the evidence on the inquiry of fraud *vel non* as that the whole question should have been submitted to the jury. If the testimony of Thornton and Pickett be true, that is if the jury should find that there was an absolute sale of the goods at a fair valuation in payment of an honest debt, that the satisfaction of this debt was the sole consideration for the sale, that whatever arrangement was made between the parties as to Pickett's possession and sale of the goods was subsequent to the full completion of the sale and passing of title into Thornton, that the sale was in no degree induced by or made in anticipation of this subsequent arrangement being entered into, and that Thornton after the sale was perfected was by reason thereof under no moral or legal obligation to make the arrangement which was made, but that, in short, the agreement as to Pickett's after relations to the property was wholly apart from and disconnected with the sale, the fact of such relations would not at all impugn the sale or invalidate it as a fraud on the creditors of the seller.—*Buford, McLester & Co. v. Shannon*, 95 Ala. 205; *Ullman v. Myrick & Bowman*, 93 Ala. 534. On the other hand the circumstances surrounding the transaction were such as that the jury might have inferred, it was open to them so to do, that all that occurred between Thornton and Pickett with reference to the stock of goods, its sale in satisfaction of the debt and the arrangement for Pickett's continued possession, &c., &c., constituted parts of one transaction, which, so considered, confessedly involved such reservation of benefit to Pickett as avoided the sale for fraud.

We have so far left out of view the character of Pickett's possession of the property levied on considered without reference to its connection with the sale of the stock by him to Thornton in the first instance since whatever be the nature of the contract by which Pickett's possession was continued, whether he held for himself or as the agent of Thornton with right of sale and compensation for his services, the original goods and others supplied by Thornton and mixed

with them were subject to attachment by Pickett's creditors, if the sale to Thornton and the agreement for Pickett's after possession were parts of one transaction. But in the event the jury should find that these matters were entirely separate and distinct from each other, it would then become an important inquiry whether Pickett was invested with title to the property, or held it as Thornton's agent, or as upon a conditional sale, the title remaining in Thornton. If the former, the levy was rightful and defendants were entitled to the affirmative charge on this part of the case alone. If either of the latter, the levy was wrongful unless the arrangement was a part of the original sale to Thornton by Pickett, and this being a question for the jury, as we have seen, the affirmative charge should not have been given. The inquiry would then turn upon the construction to be given the written agreement entered into between the parties by the terms of which Thornton was to furnish Pickett with goods to be sold by the latter as the former's agent, at a reasonable wholesale market value and for which Pickett was to account to him as his agent at said wholesale market value, in whatever amount, he, Pickett, received. It is most clear to us that this was a sale to Pickett; he was not to account to Thornton for the proceeds of the goods so furnished, but only to pay him for them at a price to be ascertained by reference to a certain standard, and which doubtless was ascertained and fixed on delivery, and such payments were to be made as the funds therefor were realized out of the sales by Pickett. Yet the stipulation is that the goods are to be sold, and the price due Thornton accounted for by Pickett as Thornton's agent; and it is our duty to accord some meaning and force to this stipulation if possible. We think a field for its operation may be found for it by construing the contract to be a conditional sale to Pickett, with a reservation of title by Thornton until a sale by Pickett, and thereupon the latter as the former's agent with respect to the title was empowered to vest the title in purchasers from him. So long as the goods were not sold by Pickett his relation to them was that of vendee upon condition, the condition being the payment of the price. The title was held by Thornton to secure the performance of this condition, and that it might be performed, the sale of the property by Pickett was contemplated, and he was Thornton's agent for the purpose of passing Thornton's title to his own vendee.

Creditors of Pickett had no right to subject the property to the satisfaction of their demands, and their attachments to that end were wrongful even though they were without

[Dowdall v. King.]

notice of the conditional character of the sale to Pickett. The case therefore turned upon the inquiry of fraud in the sale by Pickett to Thornton, as above explained. This inquiry was one of fact which should have been submitted to the jury, and upon which it was open to them to reach either of the two possible conclusions.

For the error committed by the court in giving the affirmative charge for the defendants, the judgment must be reversed and the cause remanded.

Reversed and remanded.