# Troy Fertilizer Co. v. Norman.

### *Attachment and Claim Suit.*

1. *Consideration of deed may be explained by parol.*—In attachment, where the property is claimed by a third person under a bill of sale which is attacked for fraud, claimant may show that she did not, at the time the bill of sale was executed, purchase certain claims pledged by the attachment defendant as collateral, since such testimony has reference to the consideration of the bill of sale, which, as between her and the creditor, could be explained by parol.

2. *Evidence as to good faith on issue of contemplated insolvency.*—On an issue as to whether a bill of sale of a partnership stock was made in contemplation of insolvency, evidence that the .vendors, within the four months next preceding the execution of the bill of sale, expended about $20,000 in their business, is admissible to show good faith in connection with all the evidence.

3. *Gift from heirs to their mother of their interest in money of estate effectual without writing.*—A gift by heirs to their mother, of money coming from the estate, is valid without any formal or written relinquishment of their interest therein.

4. *Sufficiency of consideration of deed from sons to mother.*—A charge which postulates that the "sufficiency of proof of a consideration to uphold the said deed (from sons to their mother) must depend upon the relationship existing between said mother and sons, and the circumstances surrounding them, in the matter of the transaction so entered into, as well as their conduct in reference to it," is erroneous since the sufficiency of the consideration for the deed would depend upon the amount and adequacy of the value parted with for it, and whether it belonged to the grantee, and on the intent with which the purchase was made.

5. *Charge of court as to validity of conveyance of partnership property to pay firm and individual debts.*—Upon the trial of a claim suit in which the claimant claims the property, as against the attaching creditor, under a deed from a partnership, consisting of her sons, made on a recited consideration of $8,000, $2,000 of which was claimed to be the individual debt of one partner; charges predicating the invalidity of the deed upon the fact that part of the consideration was

an individual indebtedness of one of the partners, and that the gran-
tors were at the time of the conveyance insolvent,and so known to be
by the grantee, are properly refused, which fail to hypothesize that it
was the intention of the parties at the time the $2,000 was loaned that
it should afterwards be paid by a conveyance of partnership property,
and which ignore evidence tending to show  that  the $2,000 debt was
assumed by the firm and that enough individual property to cover
said amount was included in the sale.

6.  *Conveyance of partnership property to pay firm and individual
debts; validity of, as against firm  creditors.*—Where a  conveyance from
sons, as partners, to their mother on a recited consideration of $8,000,
is assailed by a firm creditor, on the ground of fraud, the fact that
part of the alleged consideration is money advanced by the mother to
one of the sons to  purchase a lot and build a store thereon, a deed to
which was taken in his and her names jointly, is not sufficient to avoid
the deed where it is shown that the value of the partnership property
assigned was much less than  the  indebtedness of  the partnership to
the grantee, and less than such  indebtedness after deducting  any in-
terest the claimant may have had in said lot and store.

7.  *Same; relationship of parties may be considered with the other proof
on issue as to bona fides of conveyance.*—Where a deed  from sons, com-
posing a partnership, to their mother on a recited valuable considera-
tion is attacked by a partnership creditor as fraudulent, the relation-
ship of the parties is a relevant fact to be considered by the jury, de-
pendent for its value on the other  evidence  in the case, and, if, from
all the evidence, including the  fact of relationship,  the jury are sat-
isfied there is no fraud in the  transaction,  the relationship  does not
cast on the claimant the additional burden and duty of making other
and clearer proof.

8.  *Continued possession of vendor of goods after sale.*—Where a bill of
sale of a partnership  stock of  goods  is attacked  for fraud  by an at-
taching creditor of the vendors, the  presumption of  fraud from con-
tinued possession by the vendors is overcome by proof that they held
the property as agents for the vendee.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

The appellant, The Troy Fertilizer Co., as creditors,
sued out a writ of attachment against William L. Nor-
man and George W. Norman, partners doing business
under the firm name of Norman Brothers.  The ground
of the attachment was that the stock of goods owned by
Norman Brothers, had been fraudulently transferred by
them to Elizabeth A. Norman.  Upon the levy of the
attachment on said stock of goods, Elizabeth A. Norman
instituted a claim to said goods by the making of proper
affidavit and bond.  Upon the interposition of this claim

issue was made up, as required by the statute, under the direction of the court, to try the right of property to the goods levied upon between the plaintiff in attachment, as plaintiff, and said Elizabeth A. Norman, as claimant.

The plaintiffs introduced their writ of attachment against Norman Bros. with endorsements showing levy, and the affidavit and bond for attachment; proved their debt as alleged in the attachment affidavit, that it accrued in February, 1891, and that the property levied on was in the possession of defendants, at the time of the levy, and rested their case.

The claimant introduced in evidence a deed executed by defendants in attachment to her, dated December 31, 1891, which was filed for record and recorded in the office of the judge of probate of Montgomery county, on the 14th January, 1892. It was shown that this deed embraced substantially all the property owned by the defendants as a partnership and as individuals. It was given for the recited consideration of an indebtedness of $9,000 by Norman Bros. to Mrs. Elizabeth A. Norman, the claimant, who was shown to be the mother of the Norman brothers, for the full payment and satisfaction of which, it is recited, she accepted the conveyance of the property described, consisting of lands in Montgomery and Pike counties, on which the defendants resided; their storehouse, together with their entire stock of goods, all their stock of goods in store at Ramer, Ala., and at Kents, in Pike county, with the furniture, fixtures and appliances of trade in said storehouses, one mare, a two year old colt, two Texas ponies, two buggies, a wagon, all the corn and fodder on the premises sold, "and also all the mortgages, notes and accounts now due or to become due to said Norman Bros."

Wm. L. Norman, one of defendants, testified that he and his brother George, commenced merchandising at Ramer, in the fall of 1886; that he had about $500, and George, $100; that at the time said conveyance was executed to their mother, they were indebted to her in the sum of $8,000, due by promissory note, read in evidence, dated Sept. 21, 1891, and payable the 1st of November, 1891, with waiver of exemptions as to personal property. This note was signed by Norman Bros , W. L. Norman and G. W. Norman, in the presence of two witnesses; that the items which made up said $8,000

were moneys borrowed at various times; that the first sum borrowed was $515, July 26, 1886, for which a receipt was given, acknowledging that he, W. L. Norman, had received that amount from claimant in gold with which to buy the lot and house at Ramer from F. B. Durr and wife, the claimant agreeing, as stated in the receipt, to allow him to take the deed in his own name and hers jointly, with the understanding that the land was hers until he paid her for his interest in it. The next item was $400, on Sept. 1, 1886, with which to build a store house and crib at Ramer, on the Durr lot; the next on Aug. 28, 1890, for $200, with which to improve the store house and lot; that the balance which went to make up said $8,000, was borrowed by himself and George Norman, receipts for which were introduced, signed by the firm for various amounts, ranging from $450, on June 1, 1887, to the last item of $2,000 on Sept. 1, 1891, aggregating in all, as borrowed by the firm and by said W. L. Norman, the sum of $6,000. On Sept. 21, 1891, the date of said note, they borrowed the other $2,000 which was included in said note, making the total amount borrowed $8,000. He also testified that said store house was bought, built and repaired to be used in the partnership business of Norman Bros; that all the money he got for that purpose, had been so used, and that all received from claimant since, had been used in the partnership business. He also testified that his father died in 1883, leaving 480 acres of land, and $3,000 in money, plenty of stock and everything to live on; that he left surviving him his widow, the claimant, and five sons, two of whom were of age at the time and the others minors; that the heirs at their father's death, turned over the money to claimant, to do with as she pleased; that at the time, she had $5,000 in gold of her own money, that it was in fact the money left by his father, and the $5,000 in gold, which went to make up the $,8000 for which the note was given; that besides the sums thus borrowed, there entered into the consideration of said note the sum of $950 which was owing by Norman Bros. to one Milligan, and a debt of $150 to Sayre & Pearson. These sums aggregate $9,100. He further testified that after the sale, defendants turned over all the property mentioned in the conveyance to claimant and they stayed around the store and showed their

brother, Alfred, and one Farmer, a clerk, how to price the goods and explained the business to them, but that they made no sales or collections; that they reserved no interest or benefit to themselves in making said sale; that the stock of goods was worth between $2,000 and $2,500; that the notes, accounts and other choses in action, not including those deposited with Lehman, Durr & Co., were worth about $1,500; the store and lot at Ramer $1,000; the lot at Kents $200; the stock of goods at Kents, $1,200; that, 80 acres of land, which belonged to his brother George, was embraced in said conveyance and was worth from $400 to $500, and also, 80 acres which belonged to witness, individually, worth $400; Texas ponies $200; that his mother assumed the $950, which defendants owed Milligan, a balance of borrowed money.

He also testified, that on January 1, 1892, defendants had on deposit with Lehman, Durr & Co. notes and mortgages to the amount of about $1,200 or $1,500, placed as collateral to secure them in advances to defendants, and on that date, defendants only owed Lehman, Durr & Co. about $38; that they had with Lehman, Durr & Co. two bales of cotton, which were not sold until February thereafter; that on 2d January, 1892, he withdrew the collaterals from Lehman, Durr & Co. and sold them for $500, and put the money in his pocket, after paying about $300 of Norman Bros.' debts; and the bill of exceptions states that a transcript from the books of Lehman, Durr & Co. introduced, corroborated this statement.

He further testified, that all of Mrs. Norman's sons, the youngest of whom, at the time of the trial, was between 23 and 24 years of age, had acquiesced in Mrs. Norman's treatment of the money left by her husband, as her own, ever since his death, and recognized her right to do as she pleased with it, and she had so acted with it, since that time; that at the time the last $2,000 was borrowed, on 21 Sept. 1891, his mother required a note given for all that had been borrowed, including the amount assumed by her, and all this was done in the presence of several people who happened to be present; that at the time of the execution of the bill of sale, he did not tell his mother anything about the collaterals with Lehman, Durr & Co., and she knew nothing about

[Troy Fertilizer Co. v. Norman.]

them, or when he got them or what he did with them; that the notes and mortgages mentioned in the bill of sale, were turned over to her at the date of their execution, but these were not; and that what he did in and about the store, after the sale, was voluntary, done for his mother's benefit.

Mrs. Norman testified, against the objection and exception of plaintiffs, that she did not buy the claims in the hands of Lehman, Durr & Co. at the time of the execution of the bill of sale. The claimant introduced, against the objection and exception of plaintiff, a large number of bills and receipts from different parties, bearing date for about four months preceding, and up to the time of the execution of the bill of sale to claimant, which bills and receipts showed that Norman Bros. had paid out to their creditors and expended in their business the sum of about $20,000 during the four months preceding the 1st of January, 1892. The evidence of both G. H. and W. L. Norman introduced by claimant, was, that they retained no property, but included all they had in the sale and conveyance to claimant.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the claimant, Mrs. Norman, had any interest in the mercantile business of Norman Bros., or the business was carried on for the joint benefit of Norman Bros. and the claimant, or for the joint benefit of the heirs of Hiram Norman and the claimant, then the jury will find for the plaintiff." (2.) "The court charges the jury that the consideration sought to be proved in support of the deed of Norman Bros. to her (which is assailed by the plaintiff) is an extinguishment of an indebtedness alleged to be owing by them to her—a transaction between a mother and her sons. The sufficiency of proof of a consideration to uphold the said deed must depend on the relationship existing between said mother and sons the circumstances surrounding them in the matter of the transaction so entered into, as well as their conduct in reference to it. The law requires clearer and more convincing proof to be made if these are calculated to excite a just suspicion of the fairness of the transaction. When such

relationship exists as that of mother and sons, and the rights of a complaining creditor are involved. the law requires clearer and fuller proof to be given of an adequate consideration, and of good faith on the part of the claimant, as grantee or vendee, than would be required of a stranger, to free the transaction from all impurity of intention." (3.) 'If the jury believe from the evidence that the consideration of the $8,000 note, purporting to have been given September 21, 1891, was in part an individual indebtedness of W. L, Norman, for real estate and improvements thereon, and that at the time said note purports to have been given the said Norman Bros. were insolvent, and the same was known to claimant, or she was in possession of such information as would reasonably excite inquiry concerning their condition and have led to a knowledge of their insolvency, and that she advanced her said sons other money, and took from them said note for $8,000 covering all advanced up to that time, and the additional money advanced that day, and the said note was to mature on the 1st day of November thereafter, then upon this state of facts, without more, the jury will find for the plaintiff," (4.) "If the jury believe the evidence, they must find for the plaintiff." (5.) "If the jury believe from the evidence that at the time the last $2,000 was loaned, if it was in fact loaned, Norman Bros. were insolvent, or in a failing condition, and complainant had knowledge of the fact that the Norman Bros. were in a failing condition, or if she was in possession of such facts at that time that if followed up would have led to such knowledge and to the knowledge that they were not likely to be able to pay back said sum at maturity, except by a sale of the stock of goods to her, then the jury will find for the plaintiff," (6.) "If the jury believe from the evidence that W. L. Norman and his mother (the claimant) purchased a lot for $515 from Durr at Ramer, the mother advancing the money, and the deed was taken in their joint names, that afterwards Mrs. Elizabeth A. Norman (the claimant) advanced $400 to build a store on said lot, and subsequently $200 to enlarge the same store, the realty and improvements aggregating in value $1,115 and that these several advances were included in the recited consideration of the bill of sale in controversy as claimed in virtue of the alleged past indebtedness from Norman Bros.

43

to claimant, then they would not be legally liable for this $1,115 although included in the note purporting to have been executed Sept. 21, 1891, and this would be a fraud upon the other creditors, including the plaintiff, which would avoid the entire transaction." (7.) "If the jury believe from the evidence that Hiram Norman, the husband of claimant, died intestate in Montgomery county, this State, nearly ten years ago, leaving no debts against his estate, and $3,000 in money, and five sons, John, Wm. L., Thomas, George W. and Alfred, the last three of whom were minors, as his only heirs at law, then upon this state of facts, without more, the court charges the jury that Wm. L. Norman and George W. Norman were each entitled to a one sixth interest in said sum of $3,000, that is to say each would be entitled to $500; and if the jury believe from the evidence that this money was left with the mother to keep, and there was never any administration upon the estate, and that said money was never divided amongst the heirs, that there was no formal or written relinquishment of their interest in this money by them, but was kept by the mother with the consent of the children to be used by her whenever necessary, that she did not spend this money in the support of herself and family, but loaned it, at different times to Wm. L. and G. W. Norman; that the recited consideration of the bill of sale in controversy; as claimed in virtue of the alleged past indebtedness to claimant, includes the $1,000, the interests which would have gone to Wm. H. and George W. Norman, in the money of their father's estate, then they (W. L. and George W. Norman) would not have been legally liable to their mother for this $1,000, and if this amount was covered by the $8,000 note, purporting to have been executed September 21, 1891, it was without consideration and could not have been enforced against them." (8.) "If the jury believe from the evidence that on the 21st day of September, 1891, when the $8,000 note purports to have been executed, a part of the consideration was real estate; and the value of improvements thereon, owned jointly by the claimant and Wm. L. Norman, that on that day the claimant did in fact let her sons Wm. L. and George W. Norman have $2,000 and exacted a note for $8,000, that at the time the additional $2,000 was ad-

[Troy Fertilizer Co. v. Norman.]

vanced her said sons told her they would fail in business in a month or two, and that they would protect her in that event by selling the goods in the store to her, and if the jury believe from the evidence that the claimant knew of the insolvent condition of her said sons, at that time, and believed or had reason to believe that they would fail, and protect her, and in that event would sell out to her, or if she was in possession of such facts as reasonably to put her upon inquiry and would have led her to a knowledge of the insolvency of her sons at that time, then upon this state of facts, without more, the jury must find for the plaintiff. (9.) "If the jury find from the evidence that W. L. Norman and E. A. Norman purchased jointly from Durr real estate for $515, E. A. Norman advancing the whole of the purchase money, taking from W. L. Norman the receipt as shown by the evidence, bearing date July 26, 1886, then as to that transaction W. L. Norman was only liable for one half of the $515 with interest on it, and if the whole amount of the $515 went to make up the $8,000 indebtedness for which the note was given, and which was in part the consideration of the purchase in this case, one half of that amount is simulated and will avoid the entire purchase, and the principle is to be applied to the $400 and $200 which was invested in the improvement of the property so held jointly." (10.) "In this case the real inquiry is. *First*. Whether Norman Brothers were indebted to their mother, the claimant, in the manner and for the amount so claimed by her; and, *Second*. Whether the goods alleged to have been sold to her in payment of such indebtedness were, in fact, sold to her at a reasonably fair value. If the jury believe the debt to plaintiff is older than the alleged sale of these goods to claimant, then the burden is cast on her to establish the two facts stated above, and if on the whole evidence the jury are not reasonably convinced of the truth of both these propositions, then the claimant has failed to make out a case entitling her to recover in this action, and the relationship between Norman Bros. and the claimant being that of mother and sons, casts on the claimant the duty of making clearer and fuller proof of these facts than if they had not been so related to each other." (11.) "If the jury believe from the evidence that the vendors, Norman Brothers, remained

in possession of the property in controversy, after the alleged sale to their mother, the claimant, the burden of explaining the continued possession is upon the claimant. The unexplained possession of personal property, which it is alleged has been sold to a creditor in payment of a debt by the vendors, when the transaction is brought in question by another creditor, raises the *presumption* of fraud, and casts upon the claimant the *onus* of explaining the vendors' continued possession, so as to make that fact consistent with the *bona fides* of the sale '' (12.) ''The jury are charged that while the individual property of Wm. L. Norman and George W. Norman, respectively, could have been appropriated by them to the payment of a partnership debt in the absence of evidence that there are individual creditors who are complaining, that the jury are not authorized in estimating the amount of liability as against the property conveyed, to apply the individual property of George W. Norman to pay the individual debt of William L. Norman.'' (13.) ''If the jury believe from the evidence that plaintiff's debt was contracted by Wm. L. and George W. Norman in February, 1891, that prior to that time W. L. Norman had borrowed money at different times from his mother and executed his individual due bills to her (claimant) for these amounts, and there was no assumption by the partnership of the payment of these amounts until the 21st day of September, 1891, when the $8,000 note, covering all advances made by her to them, or either of them, purports to have been made, and afterwards a bill of sale was executed by Norman Bros. to claimant, taking partnership assets to pay these individual debts of W. L. Norman to their mother, then the court charges the jury upon this state of facts, without more, that the transaction was void as to plaintiff, and the jury must find for the plaintiff.''

It is unnecessary to set out in detail the charges requested by the claimant. There was judgment for the claimant, and the defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

A. A. WILEY for the appellant.—The sale was fraudulent, because the recited consideration includes therein an individual debt of Wm. L. Norman to his mother,

and not a partnership debt.—*Pollak & Co. v. Pritchett*, 82 Ala. 169.

When a creditor acquires a preference or advantage by purchasing property from his debtor, which operates to hinder and delay other creditors, and, perhaps, to defeat the collection of their legal demands, and the transaction is assailed, such creditor will be required to establish, by clear and satisfactory proof, the existence and validity, the *bona fides* of his debt, and if a connection by blood or marriage is shown, clearer and more convincing proof will be demanded."—*Hubbard v. Allen*, 59 Ala. 283; *Harrell v. Mitchell*, 61 Ala. 270; *Owens v. Hobbie & Teague*, 82 Ala. 469; *Dollins & Adams v. Pollock & Co.*, 89 Ala. 361–362.

The fact that there was an oral agreement, outside of the deed relied on, does not impart validity to the transaction.—*Owens v. Hobbie & Teague, supra.*

The plaintiff in this case, having shown that the debt *ante-dated* the alleged purchase, that the defendants were insolvent at the time, and that the sale embraced substantially all of their property, the *onus*, thereupon, became shifted to the claimant to establish the existence and validity of her debt and the *bona fides* of her purchase.—*Maxelbaum & Son v. Bell*, 91 Ala. 331; *Pollak v. Searcy*, 84 Ala. 263; *Lehman v. Kelley*, 68 Ala. 192; *Levy v. Williams*, 79 Ala. 171.

The unexplained retention of the possession of personal property, which, it is alleged, was sold to claimant, as a creditor, in payment of a debt by her sons, as the vendors, is, when the transaction is drawn in question by plaintiff, another creditor, a badge of fraud, going to the fact of sale and sufficiency of the consideration, casting upon claimant, as the purchaser, the *onus* of explaining the vendors' continued possession, so as to make that fact, if possible, consist with *bona fides* of the sale.—*Ullman v. Myrick & Bowman*, 93 Ala. 537; *Stephens v. Regenstein*, 89 Ala. 561.

SAYRE & PEARSON for the appellee.—The court below was induced to refuse charges No. 2 and 10 by the decision in *Smith v. Collins*, 94 Ala. 394. There was no error in refusing these charges, and reference is made to the argument of J. J. Coleman and McClellan in *Reeves v. Skipper*, 94 Ala. 409, to which nothing can be added.

There are other decisions to the same effect.—*Shealy v. Edwards*, 75 Ala. 418; *Harmon v. McRae*, 91 Ala. 413; *Tompkins v. Nichols*, 53 Ala. 200.

Charge No. 1 was abstract. There was no evidence tending to show a partnership between the claimant and the grantors in the bill of sale.

Charge No. 3 overlooks the testimony tending to show that the debt alleged to be the debt of W. L. Norman had been assumed by Norman Brothers prior to the sale; it also ignores the fact, as to which there was no dispute, that individual property enough to cover the amount of the alleged individual debt was included in the sale. The second proposition of this charge seems to proceed on the idea that claimant, knowing at the time of the execution of the $8,000.00 note and the advance at that time of $2,000.00 (which is hypothesized) that Norman Brothers were insolvent, advanced the money with the expectation of being repaid out of the goods. The testimony showed that this money had been used in the partnership business. The law does not forbid such an arrangement.—*Teitig v. Boesman*, 31 Pac. Rep. 384–5.

Nos. 5 and 8 state the same proposition as No. 3. They are faulty, too, because there was no evidence that Mrs. Norman's sons told her that they would fail in business.

Charge No. 7 proceeds upon the idea that a "formal or written relinquishment of their interest in the money" by the heirs of Hiram Norman was necessary to constitute a gift of personal property by the heirs to Mrs. Norman. An implied agreement to that end or acquiescence in her use of the money as her own would have the same effect. Charge No. 9 says in effect that the debt was simulated to the extent of half the original purchase price of the Ramer lot, because W. L. Norman was liable for half of it only, whereas he undertook to pay all of it. The true inquiry is, did the creditor bargain for and receive overpayment, or payment in excess of his just demand. *Pollock v. Meyer*, 11 So. Rep. 386; *Bank v. Smith*, 93 Ala. 100.

As to charge No. 11: it makes the retention of possession of itself and without more, sufficient to raise the presumption of fraud and to shift the burden of proof. This would give undue weight to this circumstance and invade the province of the jury.—*Tompkins v. Nichols*,

53 Ala. 200. *Shealy v. Edwards*, 75 Ala. 488.

This charge is faulty in that it takes away from the jury the right to estimate the significance of possession by the vendor even when unexplained. The difference between "relationship" which this Court has said is not of itself sufficient to raise any presumption of force to shift the burden of proof, *Reeves v. Skipper*, 94 Ala., and "possession" is a difference in probative force, a difference in degree, not in kind. They are both "circumstances to be considered," according to the late decisions, and not "badges of fraud," whatever that may mean. As to the second clause of this charge, it may be said that in this case there was testimony which, if true, robbed this fact of any fraudulent significance, and it was unfair under the circumstances to predicate anything of an "unexplained possession." There was an explanation and the question was on the sufficiency of that explanation. The legal consequences of an unexplained possession were not a matter for the consideration in this case of the jury; it was for the jury to consider the weight to be attached to two facts, to-wit : the retained possession and the explanation offered. This charge is evidently copied for the most part from *Ullman v. Myrick*, 93 Ala. 536. The charge there differed from the charge here in question by making the fact that possession was retained "with authority to sell or dispose of the property as he might think best, and account for the proceeds" a part of the hypothesis of the charge. The decision was that as qualified in the charge in that case, possession was not a badge of fraud ; it was not decided that the charge without this particular hypothesis would have been proper to go to the jury.

Charge 13 overlooks the fact that individual property was conveyed sufficient to cover the amount. said to be the individual indebtedness of W. L. Norman.

The general terms contained in the bill of sale were not conclusive that the collaterals on deposit with Lehman, Durr & Co. passed by the bill of sale. The terms of a written instrument are conclusive between the parties only. Greenl. Ev., 14th ed., 279 ; *Cunningham v. Milner*, 56 Ala. 522.

HARALSON, J.—1. There was no error in allowing

claimant to testify, that she did not buy the claims which were in the hands of Lehman, Durr & Co., at the time of the execution of the bill of sale. That testimony had reference to the consideration of the deed, which consideration, as between her and a creditor attacking the deed for fraud, she had a right to explain by parol, or even vary—by showing it was greater or less, if it was greater or less, if it was not of a different kind from that expressed.—*Pique v. Arendale*, 71 Ala. 95; *Coleman v. Pike County*, 83 Ala. 326; *Lehman v. Howze*, 73 Ala. 303; *Robinson v. Moseley*, 93 Ala. 75.

2. There was no error in allowing claimant to introduce evidence, showing that defendants, within the four months preceding the execution of their conveyance to claimant, had paid out to their creditors, and expended in their business, the sum of $20,000. They reduced their actual indebtedness by the amount they paid their creditors, and if they expended the money in their business, these facts were competent to be considered by the jury, together with all the evidence in the cause, tending to show that defendants were not contemplating a failure and closing up of their business, and defrauding their creditors at the time.

3. The plaintiff requested 13 charges which were refused. The first was abstract. There was no evidence, that the claimant had any interest in the mercantile business of Norman Bros., or that the business was carried on for their and claimant's joint benefit, or the joint benefit of the heirs of Hiram Norman and claimant.

No. 2, if not otherwise bad, certainly was for that it postulates, that "the sufficiency of proof of a consideration to uphold the said deed, must depend upon the relationship existing between said mother and sons and the circumstances surrounding them, in the matter of the transaction so entered into, as well as their conduct in reference to it." The *sufficiency* of the consideration for the deed, would depend, rather, upon the amount and adequacy of the value parted with for it, and whether it belonged to the claimant; and the intent with which the purchase was made should never be excluded. It was also subject to the vice of being argumentative.

Nos. 3 and 5 were faulty, in that they do not hypothesize, that it was the intention of the parties, at the time that said sum of $2,000 was loaned, that it was after-

[Troy Fertilizer Co. v. Norman.]

wards to be paid by the conveyance of partnership property. The third makes no reference to such intention at all, and the 5th only postulates the fact, that complainant had knowledge that defendants were not likely to be able to pay back except by a sale of the stock of goods to her, which is not the equivalent of the charge of an intention of the parties, at the time, that this should be done. Claimant had the right to lend to her insolvent sons, this money, and take the risk of their paying her; but not, very true, if it was the agreement expressed or implied, that they, being insolvent, were to convey to her partnership property, and thus screen or shield it from partnership liability, of which agreement, there is no evidence. Charge 3, besides, ignores evidence tending to show that the debt alleged to be the debt of W. L. Norman had been assumed by Norman Bros.; that individual property enough to cover the amount of the alleged individual debt, had been included in the sale; and both charges also ignore the evidence tending to show that the $2,000 borrowed, had been used in the partnership business and not on individual account.

Nos. 6, 9 and 13, if not otherwise, were certainly faulty in that they each ignore the evidence tending to show that the value of the property assigned was largely less than the indebtedness of the partnership to the claimant, and less than such indebtedness, after deducting any interest the claimant may have had in said lot at Ramer. They also ignore any reference to the intention with which said conveyance was made—whether the purpose was an honest one to pay a *bona fide* debt to claimant, or to hinder, delay or defraud the creditors of the grantor. If the $8,000. note included the $1,115., money expended for the lot and improvements at Ramer by claimant and her son William L., still, if the *bona fide* indebtedness of the firm to claimant without this, was more than the partnership property conveyed was fairly worth, this would not render the transaction fraudulent.—*Fargason v. Hall*, 99 Ala. 209; *Hayes v. Wescott*, 91 Ala. 151.

And of the 13th it may be added, that it ignores any reference to the fact, that individual property of the Norman Bros., more in value than the individual debt of W. L. Norman to claimant, was conveyed to her.

No. 7 was faulty in more respects than one, and ignores the evidence tending to show, that the heirs gave

the money to their mother—the claimant—to be hers, and to use as she pleased, which they might have done without any "formal or written relinquishment of their interest in the money," which the charge postulates as a necessary condition to their making such a disposition of it.

No. 8 is abstract. There is no evidence that the sons ever told their mother that they would fail, and would protect her by selling out to her.

There was no error in refusing charge No. 10. The fair inference to be drawn from this charge is, that after having introduced proof sufficient to make out her case to the satisfaction of the jury, the fact of being the mother of her vendors, "cast on her the duty," to still make other and fuller proof. The relationship of the parties was a relevant fact to be considered by the jury, dependent for its value on the other evidence in the case ; and, if from all the evidence, including the fact of relationship, the jury were satisfied there was no fraud in the transaction, the fact of the existence of this relationship, did not cast on the claimant the additional burden and duty of making other and clearer proof.—*Teague v. Lindsay*, (Ala.) 17 So. Rep. 538.

Under the facts hypothesized in charge No. 11—which there was evidence tending to establish—the jury were authorized to indulge the presumption of fraud, casting on claimant the *onus* of explaining the vendors' continued possession, so as to make that fact consistent with the *bona fides* of the sale. This burden would be discharged, if it were shown, that the vendors held the property not as their own, but as the agents of the vendee, for the latter's convenience, or for purposes of sale on account of the principal.—*Ullman v. Myrick*, 93 Ala. 537 ; *Mayer v. Clarke*, 40 Ala. 269; *Dearing v. Watkins*, 16 Ala. 25.

Charge 12 is so obscure as to be of doubtful meaning, and was properly refused on that account.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 709.

4. We have examined the charges given at the instance of the claimant—seven in number. It must be said, that the plaintiff's counsel has submitted no argument against them, nor made any suggestion of error in them, nor has claimant's counsel submitted any argument in their favor. Both sides seem to take it for

[Postal Telegraph Company v. Brantley.]

granted that they were free from error. If any exists, the plaintiff has waived it. We decline to review them. For the refusal to give charge 11, the case must be reversed.

Reversed and remanded.